Comstock, J.
Barmore being a tenant at will of the premises on which he erected the building in controversy, the first question is, whether the statute (Laws of 1852, ch. 884) is applicable to such a case. The first section declares “ that any person who shall, by virtue of any contract with the owner thereof perform any labor or furnish materials in building, &c., any house or other building, &c. [in certain counties of this State], shall have a lien for the value of such labor and materials upon such house or building, and upon the lot of land on which the same shall stand, to the extent of the right, title and interest, at the time existing, of such owner," &c. The term ‘ owner,’ as used in this statute, obviously refers to the erection, and not to the land on which it is placed. If the land is owned by one person, and the building by another, it is only the title of the latter which can be affected by the lien. If he has any interest in the land, that will be included in the same charge. In short, the statute, in its terms and policy, is adapted to the case of a fixture removable by a tenant, not less than to cases, more common, where the owner of the freehold himself makes and owns the improvement. If, therefore, Barmore had a right to remove the erection, it became subject to the lien of the plaintiffs for materials furnished, and they could acquire a good title by a sale under a judgment against him, obtained according to the statute.
Barmore was a tenant at will under Wynant, who had a lease of the premises for five years. Wynant was the successor to one Hall, who had held a lease for the same term of time, but had surrendered it. In Hall’s lease there was a covenant that he would leave on the premises, all trees, buildings, &c., which he might put thereon during his term. In the lease of Wynant, immediately following the description of the premises, are the words: “With all the privileges thereto belonging, as enjoyed by S. Hall.” On the part of the defendant, it is claimed that these words subjected Wynant to the covenant of Hall not to remove erections put up during the term, and on this ground that the building now in question, erected by Barmore, the undertenant of Wynant, became *238 immovably annexed to the soil. Without examining to see whether the undertenant would stand, in this respect, in the same situation as Wynant, we are of opinion that the words quoted do not have the effect of introducing into the lease of the latter the covenants contained in the prior one given to Hall. These words are descriptive of the premises and privileges to be enjoyed. It would be giving a very enlarged, and, I think, a very loose construction, to regard them as imposing burdens, while professing only to grant benefits. To allow them such a force and meaning, would be to reject a construction which is natural and obvious, and to adopt one which, to say the least, is remote and hazardous.
After the plaintiffs had caused execution to be issued upon their judgment obtained against Barmore under the lien law, and a levy to be made on the building in controversy, and shortly before the sale; the defendant procured both Wynant. and Barmore to surrender their interests in the premises leased, and Barmore agreed with the defendant to quit possession whenever required. The sale then took place, and soon after-wards, but while Barmore still actually occupied the premises, the plaintiffs attempted to remove the building, and were prevented by the defendant, who claimed to own it. Under the circumstances, the right of removing this fixture, if it ever existed, was not lost by the delay.
The general rule has been laid down in many cases, that things which a lessee has annexed to the freehold, if movable at all, must be removed before the expiration of the tenancy. (1 Salk., 368; 1 Atk., 477; 7 Taunt., 191; 1 Barn. & Ad., 394; 2 Barn. & Cres., 76; 2 Mees. & Wels., 450; 7 id., 14.) Without questioning at this time the force of the rule, an obvious qualification must be admitted where the tenancy is of an uncertain duration, and is liable to be terminated, by the happening of some event on which it depends, or by the act of the lessor, as in the case of a tenancy at will. Where the tenancy is of such a character, the supposed abandonment or gift of the fixture to the reversioner, on which the rule rests, can hardly be imputed to the tenant, until he has had a reasonable time to effect *239 the removal. [Ferard on Fixtures, 106, 107.) Another qualification rests more distinctly upon authority, to wit: That the right of removal is not lost so long as the tenant continues to occr his term has expired. (Penton v. Robart, 2 East, 88.) In us, Barmore was a tenant at will under Wynant, who ñau ~ . ase for five years. They both surrendered those interests to the lessor, but Barmore continued to occupy, agreeing to quit when required by the lessor. This arrangement brought him into immediate relation with the original lessor, and in that relation he continued to be tenant at will, even down to the time when the plaintiffs attempted to remove, and were prevented from removing, the building. Upon these facts, it is quite clear that no rights were lost by acquiescence or delay. It should, moreover, be observed, that Barmore did not, in any arrangement with the owner of the premises, profess to abandon his right of removing the fixture. And if he had done so, it is not easy to see how he could thereby affect the plaintiffs, who had antecedently acquired a lien by force of the statute, and proceeded to judgment, execution and levy.
The only question which has occasioned any considerable doubt is, whether the building put up by Barmore was an erection which he had a right to remove, his tenancy being qualified by no agreement on that subject. He was the tenant of a large hotel and boarding-house, and, as accessory to the business of keeping the establishment, he put up a ball-room adjoining, sixty feet by thirty in its dimensions, built of wood. There was nothing in the mode of its annexation to the soil, or to the main edifice, which necessarily imparted to it the legal characteristic of immovability. It could be detached and taken away without injury to the reversion. Beyond all doubt, it would be real estate, as between vendor and vendee of the land, or between the heir and the executor of the owner. But the rule of law prevailing in those relations is by no means decisive of the present question.
In a somewhat recent case in the Supreme Court of this State, it was said by an able judge “that any person who has *240 a temporary interest in land, and who makes additions to it or improvements upon it, for the purpose of better use and enjoyment of it while such temporary interest continues, may, at any time before his right of enjoyment expires, rightfully remove such additions and improvements.”' (King v. Wilcomb, 7 Barb., 266; Dubois v. Kelly, 10 id., 500.) The rule, as thus stated, is, I think, laid down somewhat too broadly. The adjudged cases, I am confident, do not sustain a doctrine so-general. On the contrary, the general maxim of the law is, that whatever is fixed to the realty becomes a part of it, and partakes of all its incidents and properties. This is the rule, even in the relation of landlord and tenant. Many exceptions have been engrafted upon it, but the rule itself has not been reversed; and, therefore, it must not be lost sight of. (Ferard on Fixtures, 8.)
The building nbw in question was, in its nature, real estate. Admitting that under the law of fixtures it could be removed by. the tenant and placed in another situation, it would still be real estate, unless fixed in its new location under circumstances like those which justified the removal from its original site. There are, in the books, many examples of movable fixtures, which become chattels the moment they are severed, and have none of the characteristics of land. That cannot be said in the present case. A building is, in its very nature, an annexation to land, and it becomes a chattel only by the application of some exceptional rulé. The mode of annexation may be material when the question is one of departure from the general law in the particular relation of landlord and tenant, or the analogous one, in. this respect, of. tenant for. life, and remainderman or reversioner.
I have looked at many cases on this subject; but I do not think it necessary or useful to cite them at large. The most comprehensive of the exceptions which they "establish is that of fixtures put up for the. purpose of trade or manufacture; and this exception has certainly been applied with great liberality. It has been held to include, improvements on agricultural lands, which combined also some of the elements of *241 trade. It has also been extended to various occupations having an affinity or resemblance to trade, although hardly included in the usual definitions of that term. (Ferard on Fixtures, 61, 69, and notes; 20 John., 29; 4 Pick., 310; 2 East, 91; 7 Taunt., 191.) The keeper of an inn or hbtel, in some sense, exercises a trade. In the English bankrupt system he is a trader, being so expressly declared by statute. (6 Geo. IV, ch. 16, § 2.) Although his right to remove fixtures and erections put up by him as a tenant, for his own convenience or profit in that business, has not been settled by adjudication, yet I incline to think that the spirit of the decisions will carry us to that extent. Adopting that conclusion, as I do with some hesitation, it is decisive of the present question. The building in controversy was erected by the tenant of a hotel, because a ball-room, as he thought, would add to the attractions of his house as a place of resort, and to the profits of his business. So far as we know, he had no design of attaching it permanently to the freehold. The mode of annexation does not evince any such design. It follows that the plaintiffs acquired a lien, under the statute, for the price or value of the materials which they furnished to the tenant, who was the “owner,” and that they also acquired a title by proceeding to a judgment and sale.
The judgment must be affirmed.
Grover, J.
It is insisted by the defendant that Barmore’s interest in the lot upon which the building was erected, was not such as to subject it or the building to the operation of the lien law. Barmore was the tenant of Wynant, without any particular agreement as to time, but paying an annual rent. This created a tenancy from year to year. While so occupying he constructed the-building. It is provided by section 1, of chapter 384, Laws of 1852, among other things, that any person who shall hereafter, by virtue of any contract with the owner thereof, or of his agent, perform any labor or furnish materials in building, altering or repairing any house or other building in the county of Westchester (and others *242 named in the act) shall have a hen, for the value of such labor and materials, upon such house or building and upon the lot of land on which the same shall stand, to the extent of the right, title and interest at the time existing of such owner. The interest of a tenant from year to year in the lot upon which he erects a building, and his interest in the building, fall within the language of the act, and there is no reason to except such interests therefrom. This act should be liberally-construed so as to attain the end designed by its enactment. That end was to secure to laborers' and materialmen their pay for services rendered and materials furnished for the construc■tion of buildings. • The Legislature have not'required any definite extent of interest as a requisite of the attaching of the lien. The plain import of the terms used imply that the lien shall attach upon any valuable interest in the building and lot.
The defendant insists that the covenant contained in the lease to Hall, relative to leaving buildings, fences, &c., upon the lot, is adopted in the lease to Wynant; and that the latter, by its true construction, subjects the lessor to the same obligation,'in that respect, as the former. The only reference made to the lease to Hall, in the one given to Wynant, occurs in the description of the premises and privileges as enjoyed by Hall. This reference only ascertains with greater certainty the premises' covered by the lease and the extent of the privileges granted to the lessor. They do not purport to impose any burden upon the lessor, or in any way subject him to the covenants contained in the lease to Hall. Ho such intention can be inferred from the mode and language in which the reference is made.
The defendant claims that the building in question formed part of the real estate, and that Barmore had no right to remove it- from the demised premises.. As between vendor and vendee, mortgagor and mortgagee, there can be no doubt that lire building would constitute a part of the realty and pass with it. Unless Barmore, as tenant, had'the right of removal, ■the plaintiff acquired no title to the building, and the motion *243 for a nonsuit should have been granted. These premises were used as a public house. The building in question was erected for the accommodation of the business. It falls within the reason of the rule conferring upon tenants the right of removing buildings erected for the purpose of trade and manufacture. There can be no reason why a tenant engaged in keeping a boarding house, a tavern or livery stable upon demised premises and requiring additional accommodations, should not be at liberty to construct buildings and remove the same at the end of his term, that will not apply with equal force to buildings erected for the purpose of manufacture. The distinction between erections for trade and agriculture rests upon artificial reasoning not very satisfactory, but is perhaps too firmly established to be disregarded. The building in question is more nearly allied to the former than the latter class, and should be treated as an erection for the purpose of trade. Within the rules established in regard to these there can be little difficulty in sustaining the right of Barmore to remove it. In Holmes v. Tremper (20 John., 29) it, was held that a tenant might remove a cider mill and press erected by her during the term. In giving the opinion of the court, Spencer, Oh. J., says: “ I confess I never could perceive the reason, justice or equity of the old cases which gave to the landlord such kind of erections as were merely for the use and convenience of the tenant, the removal of which neither defrauds nor does the least injury to the landlord.” In Van Ness v. Pacard (2 Peters, 137), it was held that a tenant might remove a two story house, resting upon a stone foundation, having a cellar and chimney, erected for a residence and for carrying on the dairy business. It has been held in Massachusetts (4 Pick, 310), that a tenant may, at the expiration of his term, remove all such improvements as were placed there by him, the removal of which will not injure the premises or put them in a worse plight than they were when he took possession. The cases are numerous upon the subject of fixtures—many of them were reviewed by Mr. Justice Harris, in Dubois v. Kelly (10 Barb., 496). The rule to be gathered from the cases I *244 think is that a tenant may remove, during his term, all erections made by him for the purpose of trade that can be removed without injury to the land or something permanently attached thereto. Where the foundation upon which a building rests is imbedded in the earth he cannot remove the foundation. When the building rests upon such foundation and is confined by its weight only, he may remove the building. Such a rule promotes the interest of the tenant. It enables ‘him to obtain the greatest advantage from the use of the land. It works no injury to the landlord. He obtains his land at the end of the term in as good condition as though no erections 'had been made. There is no reason why he should appropriate to 'himself the fruit of the tenant’s outlay without compensation. 'The building in question was not in any manner affixed to' the freehold save byits weight. Barmore, therefore, had a right to remove it. It was subject to the plaintiff’s lien. The defendant cannot object to any irregularity in the proceedings to enforce it. This is a right available to Barmore alone; the proceedings are conclusive upon third persons..
There is nothing in the objection that the kitchen was moved and fence removed for the purpose of clearing the ground on which to place this building. These acts Barmore had no right to do without the consent of the defendant. But although liable for the damages thus occasioned, the title to the building would not be thereby affected. The defendant could not avail himself of the mortgage given by Barmore to Wynant. This was not transferred to him by the release of the premises in August, 1853. That was simply a surrender of his rights under the lease. The rights of the plaintiff could not be affected by any of the transactions between Barmore, Wynant and the defendant after the execution was levied.
• The judgment should be affirmed.
Selden and Allen, Js„ dissented,; all the other judges concurring,
Judgment affirmed.