## ISABELLA A. ADAMS VS. J. L. POWER.

1. NOVATION: *Delegation. Agency.*

  To constitute a delegation two facts must concur: the new creditor must be substituted with the debtor's consent, and a once existing debt to the new creditor must be extinguished, which extinguishment serves as the consideration for the new liability. The general rule of the common law is that an agent cannot bind his principal by a sealed instrument, unless he has been appointed by a writing under seal; but the rule in this country is so far relaxed as to allow a subsequent ratification, by acts of a contract under seal, if the law does not require such instruments to be sealed. The defeasance contract would have been as effectual without seal as with it. The statute of frauds does not require such agreements to be in writing, under seal.

:2. CONTRACT: *Agency. Novation. Case in judgment.*

  P. & J. purchased of S. one-fourth interest in the *Clarion* newspaper establishment; the note was made payable to C. & C., at the request of S., in order that he might assign it to C. & C., as indemnity to them as sureties on his obligation to A. The note was to be paid by P. & J. in advertising and subscriptions, to be procured by S. Of this fact C. & C. had no knowledge at the time. S. had formerly purchased the *Clarion* from A., and C. & C. were his sureties for the purchase money. A. received the note of P. & J. in payment of the note held against S., with C. & C. as ·sureties. C. & C. gave no consideration for the note of P. & J. The note was transferred to A., without recourse, by C. & C. A. was also ·ignorant, at the time of the contract and transfer of the note, that it was ·payable in advertising and subscriptions, etc. The daily *Clarion* ceased in August, 1868. S. failed to get the advertisements and subscriptions for the paper. P. & J. had no knowledge that the note belonged to A. until eighteen months after the contract. *Held,* that C. & C. have no better right against the makers than S. could have had if he were the payee, and that the acceptance of the note and contract by C. & C., on the terms and conditions stated by S., was a ratification of the acts of S., although there ·was no prior authority given him as agent, and that A. took the note, under the statute, subject to all the defenses and equities that might have been set ·up against C. & C., and the result would be the same, whether it be their ·contract or the contract of S.

ERROR to the Circuit Court of *Hinds* County.

Hon. GEO. F. BROWN, Judge.

Plaintiff in error brought suit against the defendant in error ·on a promissory note for $3,750. The note was executed by ·defendant in error and one B. T. Jones (as to whom the suit was dismissed). The testimony shows that the consideration .of the note was the sale of an undivided interest in the *Clarion*

newspaper office to Power & Jones by one J. J. Shannon,. and, at the request of Shannon, the note was made payable to. A. R. Carter and John H. Cook, in order that he might pass. it over to Carter & Cook, to indemnify them as Shannon's. sureties on a note held by Adams, the plaintiff in error, which was done, and Carter & Cook transferred the note to plaintiff in error in liquidation of Shannon's note, on which Carter & Cook were sureties.

At the time of the execution of the note the following agreement was entered into between Shannon and Power & Jones, to wit:

"It is agreed between the undersigned, attorney for E. C. Palmer & Co., and John H. Cook and A. R. Carter, that James. J. Shannon, as agent for said parties, will canvass and act as agent for the *Clarion* newspaper, conducted by Power &. Jones, and use his best efforts to procure advertisements and subscriptions for said paper; and they further agree with Power & Jones that said Shannon, unless he dies or becomes. disabled by sickness permanently, so that he cannot canvass for advertisements, will procure enough advertisements to pay the two notes held by us, dated February 11, 1867, each for the sum of $3,750, one due January 1, 1868, and the other January 1, 1869, and we, the said parties, represented by our said agent and attorney, bind and obligate ourselves to take out the whole amount of said two notes by collecting bills for advertisements and subscriptions sent by us or our agent to the *Clarion*, unless our agent should die or be disabled, as aforesaid.

"J. L. Power and B. F. Jones, on their part, agree to publish all the advertisements sent them for publication by said J. J. Shannon, or the parties he represents, at their regular rates of advertisements in the *Clarion* newspaper, less twenty-five per cent. commissions, and also to supply all subscribers who may be sent them by the said Shannon with the *Clarion*, allowing twenty-five per cent. on amount of subscriptions, and agree to make out and receipt all said bills for

Opinion of the court.

:advertisements and subscriptions, and let said Shannon, or the parties he represents, collect the same, and give them credits ·on said notes for the amounts so collected, less the twenty-five per cent. commissions. Said Power & Jones bind and obligate themselves to publish a daily and weekly paper in the city of .Jackson, and to publish promptly any and all advertisements .sent them by said Shannon, or the parties he represents, and in case they suspend the publication of a daily and weekly, or fail to publish the advertisements promptly that may be sent them for publication by said Shannon, then the two notes above described will, and are agreed to be, collected in money, and this agreement to take out the notes in advertisements and ·subscriptions is to be, from the date of suspension of publication as aforesaid, void and of no binding obligation.

"It is agreed by the said Shannon, agent and attorney as :aforesaid, that all the money that may be realized for adver- tisements published in the *Clarion*, and subscriptions obtained by him, up to the 11th day of February, 1868, shall be ·esteemed as cash paid on the 11th day of February, 1867, and shall stop the interest on said notes to the extent of receipts ·of money by Shannon.

"Witness our hands and seals, this 11th day of February, 1867.

[Signed,]             "JAS. J. SHANNON. [L. S.].
                     "B. F. JONES.     [L. S.].
                     "J. L. POWER.     [L. S.]."

*Geo. L. Potter* and *Frank Johnston*, for plaintiff in error.

*Harris & George* and *T. J. & F. A. R. Wharton*, for ·defendant in error.

SIMRALL, C. J., delivered the opinion of the court.

This case has been once before in this court, and will be found reported in 48 Miss., 451. On the case, as made in that record, it was held that the testimony tended to show a nova- tion, by which the note of Power & Jones was made payable to Carter & Cook in extinguishment of Shannon's indebted-

ness to them ; the consideration which supported the promise to pay Carter & Cook being the satisfaction of Shannon's debt to them.

In that view of the transaction it would follow that nothing connected with the sale of Shannon's interests in the *Clarion* newspaper establishment, including the contemporaneous defeasance agreement with Shannon, could be set up in opposition to a recovery by Mrs. Adams, the indorsee of Carter & Cook.

The kind of novation which the testimony strongly conduced to prove was what, in the civil law, is called " delegation:" A new creditor is substituted, to wit, Carter & Cook. But, as stated in the opinion, two things must concur : 1st, the new creditor must be substituted with the debtor's consent ; 2d, a once existing debt to the new creditor must be extinguished, which extinguishment serves as the consideration for the new liability.

It was because, as the testimony was construed, Shannon's debt to Carter & Cook was discharged by the note of Power & Jones, payable directly to them, instead of to Shannon, that the defenses set up by Power were held not to be admissible.

On the second trial the facts were more fully developed, and quite a different complexion was given to the case from what it presented on the first trial.

Instead of there being testimony in the record now before us conducing to prove a novation in the form of " delegation " between Shannon, Power & Jones, and Carter & Cook, the proof is clear that Shannon was not indebted to Carter & Cook, and there could, of course, be no such thing as a cancellation of that indebtedness by the substitution of Power & Jones' note to them for that purpose.

At the time the note and accompanying agreement were made, Shannon stated as the reason why he wanted it in the names of Carter & Cook, as payees, that they were sureties for him, and he desired it as indemnity for them, representing that he was acting as their agent.

Shannon, in his deposition, states in substance that, very shortly after the note and defeasance agreement were made, he inclosed the note, copy of agreement, and a deed to a parcel of land in Jasper county, to Carter, with instructions to use the note and deed in settlement of his indebtedness to Mrs. Adams, for which Carter & Cook were his sureties.

Carter, in his testimony, denies that he received the defeasance agreement and the deed with the note. He admits, however, that Shannon instructed him, in the letter, to give the note to Mrs. Adams, in payment of the indebtedness to her. A few days after receipt of this letter, with its inclosure, Carter says that he met Shannon and informed him that Mrs. Adams was willing to take the note and the deed to the land for her debt. To this Shannon assented, and then advised him of the privilege to pay the note in subscriptions and advertisements. Carter and Cook both state that they parted with no consideration for the note.

The testimony establishes these propositions: 1st. That Carter & Cook gave no consideration for the note. 2d. The note was delivered to them or to Carter, as indemnity, to be passed to Mrs. Adams on account of the debt she held against these parties. 3d. The note rests for its consideration on the bargain and sale of Shannon's interest in the *Clarion* newspaper establishment to Power & Jones. 4th. Carter & Cook were "indicated" as payees, to indemnify them, and for the purpose of using the paper to take up Shannon's debt, for which they were sureties. 5th. Carter & Cook have no better right against the makers than Shannon could have had if he were the payee.

The jury would have been well warranted in finding that, at the same time Carter received the note from Shannon, he also received a copy of the defeasance that imparted knowledge of the origin and consideration, and that Shannon had assumed to act as agent; that disclosed to Shannon's sureties that he had taken the responsibility of an agency for them, both as respects the note and defeasance agreement, in order to pro-

vide, in part, the means of relieving his sureties and himself from a debt. Although there was no prior authorization, the acceptance of the note, on the terms and conditions stated by Shannon, was a ratification of Shannon's act.

The general rule of the common law is that an agent cannot bind his principal by a sealed instrument, unless he has been appointed by a writing under seal. But the rule seems in this country to have been so far relaxed as to allow a subsequent ratification, by acts of a contract under seal, if the law does not require such instruments to be sealed. Worrel v. Mann, 5 N. Y., 240; Lawrence v. Taylor, 5 Hill, 113; Randel v. Van Vetcham, 19 Johns., 60; Evans v. Wills, 22 Wend., 340; Story on Ag., §§ 154, 160–162. The defeasance contract would have been as effectual without seal as with it. The statute of frauds does not require such agreements to be in writing under seal. The acceptance of the note, and the appropriation of it with knowledge of the circumstances and agreement with which it was connected, was a ratification of the assumed agency of Shannon.

But whether the defeasance be considered as the contract of Carter & Cook, as principals, by Shannon, as agent, or whether it be regarded as the personal contract of Shannon, the result is the same. The note and agreement grow out of the same transaction and rest upon the same consideration. Carter & Cook, paying no value for the note, became payees by the appointment of Shannon, and for the reason of which they were advised. They stand in no more favorable light, nor with better claim, than would Shannon if he were payee.

Mrs. Adams, the assignee of Carter & Cook, took the note, under the statute, subject to all the defenses and equities that might have been set up against them.

It was held in this case, when formerly before us, that the special plea was good upon demurrer; that plea set up the defeasance contract, as made by Shannon, agent for Carter & Cook, and a non-performance of the covenants by Shannon,

averring a readiness and willingness by the defendant to perform, etc.

Whether this agreement was made by Shannon, as agent, and subsequently ratified by his principals, or whether it was his personal contract, the result is the same, under the facts as presented on the last trial.

It was not error to permit the counsel for the defendant to open and conclude the argument to the jury, as the defendant held the affirmative of the issues submitted to it.

These views dispose of all the questions made by the assignment of errors.

Judgment is affirmed.