FULCHER, administrator, *v.* MANDELL *et al.*

1. When judgment was obtained and the execution issuing therefrom was levied upon land, and a claim was interposed, the prosecution of this claim in the courts for over six years was such a public act on the part of the plaintiff in judgment as to prevent the statute of limitations from running pending the litigation, as to all the property of the defendant.

2. In a proceeding against an administrator to subject certain property as property of his intestate, the defendant in *fi. fa.*, to which a defence was interposed that the property was chargeable with debts of the wife of the intestate from whom the intestate had inherited it and with a debt of the intestate himself, the administrator could not testify in his own behalf concerning a debt due him by the intestate and his wife, though he was competent to testify about the debts of others, or upon any other matter which did not bring his interest into antagonism with that of the estate.

3. While plaintiff could have levied his execution upon any property of the intestate which he could find, without making the administrator a party to the judgment, yet the administrator might have assets in his hands which could not be reached by levy; and therefore plaintiff would have the right to make him a party by *scire facias*, so as to bind him by the judgment in case he did have such assets.

(*a*) But while the plaintiff has such right, the administrator would not be deprived of any of his rights by such a proceeding, but could show any fact to relieve himself that he could show if the suit had originally been commenced against him as administrator; such as no assets, complete administration, that the assets in his hands were taken possession of by the intestate as the sole heir of his wife without paying her debts before taking such possession, and that there are outstanding debts against the wife sufficient to exhaust the assets.

(*b*) Nor is he estopped from making this proof by having alleged in his inventory or return that the assets belong to his intestate, since such return may be perfectly consistent with the fact that the intestate got possession by reason of being the sole heir of his wife and died in possession of them. If the administrator can show by his own oath that the wife owed other debts than the one to himself, and by other testimony that she owed him and was liable for this debt, it should be paid out of her assets before the debts of her husband.

November 18, 1889.

Judgments. Dormancy. Witness. Administrators and executors. Parties. Estoppel. Inventory. Before Judge RONEY. Richmond superior court. April term, 1889.

On December 21, 1869, James H. Royall and Wm. S. C. Morris, as executors of John C. Poythress, deceased, sued Armstead Fulcher, and on April 30, 1873, recovered against him a judgment for $500. Execution

issued May 1, 1873, and on July 3, 1873, was levied on 800 acres of land, more or less. To 725 acres of this tract a claim was interposed by Mary Ann Fulcher, wife of defendant in *fi. fa.*, in behalf of herself and certain remaindermen under a trust deed in which she and they were named as the beneficiaries, the trustee not being in life at the time of making the claim. This issue was finally disposed of in favor of the claimant, upon a second trial, on April 21, 1885.

On June 7, 1873, process of garnishment was sued out for the plaintiffs in *fi. fa.* to reach a fund claimed to be due the defendant in *fi. fa.*, and the answers thereto having been traversed, the issue was disposed of on March 3, 1885, by the dismissal of the garnishment by the plaintiffs' attorney. On the same day, the defendant in *fi. fa.* paid to that attorney $100 on account of the judgment in question. It had, on February 26, 1879, been assigned to Mary E. Mandell and Annie R. Munnerlyn, legatees under the will of Poythress, by J. T. Miller, as executor, he having succeeded the two executors above named, who had died.

Armstead Fulcher died intestate, and James A Fulcher (the present defendant) was appointed administrator of the estate, upon his petition to the court of ordinary dated May 6, 1887, reciting that the estate was of the probable value of $1,000 and consisted mainly of 450 acres of land. The inventory and appraisement sworn to by the administrator values this land at $1,125, the only other property mentioned therein being $91 worth of personalty. This land was part of the land that had been levied on and claimed. On August 1, 1887, notice of the judgment in question as a claim against the estate was given to the administrator by the plaintiffs' attorneys.

On September 19, 1888, a *scire facias* was issued, notifying the administrator to show cause why the judg-

ment should not be declared of full force and execution directed to issue against him in favor of the assignees, to be levied on the estate in his hands unadministered. By way of amendment to this, the plaintiffs alleged that, on the several trials of the claim case, the defendant testified as a witness, and was examined by depositions October 9, 1873, and thus had full notice of the pendency of the proceedings; and that by reason of the payment of $100 on the judgment by the defendant therein when the garnishment proceeding was dismissed, the execution was of full force (at the date the *scire facias* was issued). They prayed that said defendant show cause why he should not be made a party defendant, and when so made a party, required to show cause why he should not pay over to the plaintiffs, from the property in his hands to be administered, the amount of the balance due on the *fi. fa.*

The defendant demurred to the *scire facias* because (1) the writ alleges that the judgment which it seeks to enforce was obtained against defendant's intestate in his lifetime and execution issued thereon prior to his death, and that said judgment and execution are still of force; (2) it does not seek to make this defendant a party to said judgment; (3) it fails to show any reason why the execution cannot be levied on the estate of the intestate alleged to be in the hands of defendant as administrator, unadministered; (4) it fails to show of what that estate consists, so as to enable the court to judge of the necessity for the increased costs sought to be entailed thereon by the issuing of said writ; and (5) it shows that the judgment sought to be enforced is dormant, and a revival of it barred by the statute of limitations. The fifth ground of demurrer was partially sustained, it being held good as to all property beside that set forth in the claim affidavit. The other grounds were overruled entirely, and the defendant ex-

cepted *pendente lite*. The plaintiffs so excepted to the sustaining in part of the ground mentioned.

The defendant pleaded the following facts in bar: All the property set out in his inventory as administrator was the sole and separate property of the wife of Armstead Fulcher, who died about thirteen months before him, and upon her death was taken possession of by him as her sole heir without administration, under §1761 of the code, subject to her debts, she having died without any lineal descendant. There are outstanding debts of hers sufficient to absorb the entire property, among which is a note for $1,000 and interest given by Mrs. Fulcher and her husband to defendant in payment for the property in his hands as administrator and for supplies furnished by him to her to run the plantation, he having conveyed it to her and taken the note in payment for it and the supplies. There are other debts amounting to about $250 of hers, which her husband failed to pay by reason of his death so soon after she died. Of this amount, $27.25 is due defendant for her funeral expenses paid by him. The property set forth in the inventory is not worth more than $1,000. No other assets ever came into his hands as administrator. He has fully administered the estate except as to said assets, which are not sufficient to satisfy debts of a higher nature against deceased, to wit, the debts of his wife. Attached to the plea is a copy of the note signed "Mary A. J. Fulcher; A. A. Fulcher," dated Oct. 24, 1885, promising to pay, on or before the first day of January next, to J. A. Fulcher, $1,000, "for value received in payment of land and supplies for our use." It is endorsed with a credit of $10 paid Feb. 10, 1887.

On the trial, the deed referred to in the plea appeared in evidence. It is dated February 5, 1880, is from James A. Fulcher to Mary A. Fulcher, and conveys,

in consideration of $212.81, the land in question, containing 750 acres. From the testimony of the defendant it appears that he acquired title by paying a debt due to one Burdell, to whom a security deed had been made by Armstead A. Defendant had bought 100 acres of the land for $800, and in order to get title, took up Burdell's claim, which amounted to $336. In the claim case defendant testified that Armstead A. afterwards paid him this $336; but in the present trial he explains by saying that he took Armstead A's and his wife's note for that amount as so much cash, and this was the way the payment was made. He now testifies that he never actually received the money, but did receive a mule valued at $80 thereon. After taking up the Burdell debt, defendant made a deed of gift to Mrs. Fulcher for an expressed but not paid consideration of $5. Subsequently the property was sold at sheriff's sale for taxes, and defendant bought it, and afterwards made the deed to Mrs. Fulcher above described as in evidence. In the meantime, however, Mr. and Mrs. Fulcher owed him various amounts for supplies he purchased and paid for, and used by them in running the plantation; and at the time of making this deed, he took Mr. and Mrs. Fulcher's joint note for $1,000 (attached to his plea and in evidence), and gave them up the accounts and notes he held against them up to that time. This $1,000 note was the cause of his transfer to his aunt, Mrs. Fulcher; it was to secure all claims he had against her. Of the consideration of the deed $40 was paid; the balance is due. He could not say how much was due him, but claimed that the amount of the note was due. He kept no books, and having given up his accounts and other memoranda of indebtedness, he had no evidence of it left but the $1,000 note. Mr. and Mrs. Fulcher wanted him to be satisfied for what he did for them, and he was so satisfied by taking

this note. The land was trust property belonging to Mrs. Fulcher. It was responsible for supplies. All but 450 acres was sold before her death, which was in February, 1886. She left no children; her husband was her sole heir. Defendant paid her funeral expenses during the life of her husband. These were not allowed him by the ordinary. He returned the 450 acres as administrator of Armstead A. Fulcher. This land is responsible for the payment of other debts due him by Mrs. Fulcher to five other persons, including a guano debt; all these amounting to about $275. It is sand land, of not much account, value about nine to twelve hundred dollars, fifty acres tolerably good. The 450 acres was included in that involved in the claim case. It is all the property defendant has, except the bed and other little things returned to the ordinary.

A witness introduced by the plaintiffs testified that Armstead Fulcher came to him to get money to pay some indebtedness to defendant, saying he would secure witness in land. Did not know whether or not he ever paid defendant. Afterwards defendant told witness he had a $1,000 note against the place, and perhaps showed it. Witness counted the thing as lost, but afterwards Mr. and Mrs. Fulcher came to him and made him a deed to 31 acres of land, which he has still. This cancelled the debt.

The jury found for the defendant. The plaintiffs moved for a new trial on the following grounds:

(1) The court, at the opening of the case, after both parties had announced ready upon the hearing of the argument upon the demurrer filed by the defendant and motion to continue the case upon the ground that this was not the trial term, directed the case to proceed and ruled, as matter of law, that the judgment set forth in the *scire facias* was dormant except as to the property involved in the claim case.

(2) The court permitted defendant to testify as to matters arising between himself and Armstead and Mary Fulcher; plaintiffs objecting that he was a party to the contract, directly interested in the matter in issue, and could not testify as to the consideration or circumstances under which the note set out in his plea was given; the testimony particularly objectionable being as follows: The note put in evidence given me by Mr. and Mrs. Fulcher is the cause of my having transferred to my aunt this land. They had been owing me ever since I bought the land from Burdell. I never have been paid. When they gave me this note, I gave them all the accounts I had against them. She died February, 1886. This note relates to this very land. My aunt said she wanted to secure me. I told her I did not want the land; I wanted the money; and they gave me this note. The debt existed against Mr. and Mrs. Fulcher. My aunt gave me this note to secure me against all claims against her.

(3) The court permitted defendant to testify that the real estate set forth in the inventory of the estate of Armstead Fulcher, was property that Armstead had inherited by virtue of being the heir at law of his deceased wife, and chargeable with her debts; plaintiffs objecting that defendant was estopped by his return of the property absolutely as that of his intestate, and could not by parol change the character of that return.

(4) The court refused to charge that a return of property by an administrator as that of his intestate, estops him from showing that it was the property of some other person and chargeable with that person's debts.

(5) The court refused to charge that if it appears that defendant claims as a creditor by note of Armstead Fulcher, and plaintiffs' debt is a valid judgment as to the estate, they are entitled to recover against him, as administrator, to be paid in preference to the note due him personally.

(6) The verdict was contrary to the charge, given at plaintiffs' request, that if the $1,000 note was in whole or in part for the debt of A. A. Fulcher, and Mary A. was security thereon and not a joint maker, then it is void so far as she is concerned.

(7) The verdict was contrary to the evidence, particularly in that it appeared from defendant's testimony that a portion of the debt represented by the note he held was an obligation of Armstead Fulcher taken up from Burdell, and that the money advanced by defendant from time to time for the making of this note was upon orders of Fulcher himself.

(8) Under the facts of the case and under defendant's testimony, the note referred to is void, it appearing that it was first given for the debts of Armstead Fulcher, and afterwards for his and Mary A. Fulcher's; and defendant not being able to show how much of the debt of each was in this note, and the burden being on him to do so, he must lose it.

(9) The court charged that if this property belonged to Mrs. Fulcher, as it was determined to be in the claim case, then it is justly chargeable with all debts that she owed. The court here erred in limiting plaintiffs' rights to the issue in the claim case, which was not the title relied on by defendant, but his own personal deed, the note stating in payment of lands, etc.

Separate from the motion for a new trial, the plaintiffs moved that the court vacate his ruling upon the demurrer, the same having been verbally rendered and not placed on record, and being the matter set forth in the first ground of the motion for a new trial; in order that, should a new trial be granted, the case might proceed as if no such ruling had been made and the trial be had *de novo* in every particular. This order was granted, and at the same time the motion for a new trial was sustained; the court being of the opinion that

the judgment was not dormant in whole or in part, and that, under the evidence and the law, the plaintiffs were entitled to the issuing of an execution against defendant as administrator. The defendant assigned error upon both of these rulings, and upon the matter complained of by him *pendente lite.*

W. W. MONTGOMERY, for plaintiff in error.

FRANK H. MILLER, *contra.*

SIMMONS, Justice.

1. The court did right in granting a new trial in this case. He held on the trial of the case that the judgment was dormant as to all the property of the defendant except that involved in the claim case. His idea seemed to be that the statute ran against the judgment during the pendency of the litigation in the claim case. Upon the motion for a new trial, he reversed this ruling and decided that the judgment was not dormant. In this we think he was clearly right. The prosecution of this claim in the courts for over six years was such a public act on the part of the plaintiff in the judgment that it prevented the statute from running pending the litigation. In the case of *Gholston v. O'Kelly,* 81 *Ga.* 19, all the authorities on this question are collated, and that decision and the cases there cited show that the judge below was correct in holding the judgment in this case not dormant. See especially the case of *Water Lot Co.* v. *Bank,* 53 *Ga.* 30, wherein the court say that any proceeding by the plaintiff showing that he claimed his judgment to be a subsisting one, entered of record (as, for example, putting in his *fi. fa.* to claim money, prosecuting a claim, etc.), is a substantial compliance with the act of 1825, so as to prevent the judgment from becoming dormant.

2. The court did right in granting a new trial on the ground, also, that he allowed Fulcher, the administra-

tor, to testify in his own behalf concerning a debt due him by Mr. and Mrs. Fulcher. In the case of *Finch* v. *Creech*, 55 *Ga.* 124, this court held that "an administrator, though a creditor of intestate, is a competent witness to show by debts of the estate other than his own, the necessity to sell land, and to show his acts and the state of his account since the administration, but not to prove any debt due to him from the intestate arising from a partnership between them, or otherwise." According to this case, Fulcher, the administrator, was an incompetent witness to testify concerning any debt due him by Mr. or Mrs. Fulcher, but he was competent to testify about the debts of others, or upon any other matter which did not bring his interest into antagonism with that of the estate.

3. The court was right also in overruling the demurrer to the *scire facias*. While it is true, under our code, that the plaintiff could have levied his execution upon any property of the intestate which he could find, without making the administrator a party, yet the administrator might have assets in his hands which could not be reached by levy, and therefore the plaintiff would have the legal right to make him a party by *scire facias*, so as to bind the administrator by the judgment in case he did have assets upon which the execution could not be levied. Upon this subject see the reasoning of WARNER, C. J., in the case of *Shepherd* v. *Ryan*, 53 *Ga.* 563. While the plaintiff in a judgment has the legal right to make an administrator a party, the administrator is not deprived of any of his rights by such a proceeding. In this kind of proceeding he can show any fact to relieve himself that he could show if the suit had originally been commenced against him upon the judgment. He can plead any of the pleas that he could have pleaded if the original suit had been brought against him as administrator; and if he could sustain

his pleas by proper proof, the judgment would be rendered against him only as if he had been sued originally. In this particular case we think he would be entitled to show that he had no assets belonging to the estate of the intestate, or that he had fully administered them, or he could show by proper testimony that the assets which he had in his hands were taken possession of by his intestate as the sole heir of his wife, and that the intestate had not paid the debts of his wife before he took possession of them, and that there are outstanding debts against the wife sufficient to exhaust what assets he had in his hands.

Nor do we think that he is estopped from making this proof by his inventory or return as administrator. In his inventory or return he alleges that the assets belong to Mr. Fulcher, his intestate. That return may be perfectly consistent with the fact that his intestate got possession of them by reason of being the sole heir to his wife and died in possession of them. The husband cannot get a clear title as against creditors to the assets of his wife, unless he pays her debts. If, therefore, in this case the husband did take possession of the assets of his wife, and failed to pay her debts, her creditors would be entitled to be paid out of the assets, in preference to the husband's creditors. If his administrator can show by his own oath that the wife owed other debts than the one to himself, and can show by other testimony that she owed him and was liable for this debt, we think it should be paid out of her assets before the debts of her husband, and that the administrator would not be estopped from showing that the property in his hands was really the property of the wife, and subject to her debts, although in his return or inventory to the ordinary he returned it as the property of the intestate.

With these principles settled, we think there will be no difficulty on the next trial.          *Judgment affirmed.*