(No. 1337.)

## W. S. GAGE, AS SURVIVING PARTNER, Etc., RESPONDENT, v. M. A. PHILLIPS, APPELLANT.

PAROL EVIDENCE, WHEN INADMISSIBLE—MERGER.—In the absence of
fraud or mistake, proof of the contents of lost letters is inadmissible
to alter or vary the terms and effect of a mortgage subsequently
executed between the parties, and all previous oral negotiations and
agreements concerning the subject matter are merged in the mort-
gage.

BILL OF SALE—IGNORANCE OF CONTENTS.—Ignorance of the contents of
a bill of sale upon the part of one signing it, when neither fraud in
its procurement nor falsity of representations are alleged, will not
excuse the signer from its legal effect.

EVIDENCE—WHEN EXCLUDED BY STATUTE.—Under the statute of Ne-
vada, prohibiting a person from testifying when the other party to
the transaction is dead, or when the opposite party to the action is the
representative of a deceased person, as to the facts which transpired
before the death of such deceased person, a defendant, in a suit by a
surviving partner to foreclose a mortgage, will not be allowed to tes-
tify that the deceased partner accepted property under a verbal
agreement in satisfaction of the mortgage.

APPEAL from the District Court of the State of Nevada, Ormsby
county.

Richard Rising, District Judge.

The facts are stated in the opinion.

Trenmor Coffin and William Woodburn, for Appellant.

I.   Even if the court should refuse to consider the testimony

of defendant on the ground that the opposite party to the transaction is dead, the testimony of disinterested witnesses, coupled with strong circumstances, make it clear that the bill of sale was given as security for a sum of borrowed money not involved in this case.

II.   The court erred in excluding the offered testimony of defendant as to payment and satisfaction on the ground that Hampton, of the firm of Hampton & Co., with whom she negotiated, was dead.   (*Crane, Hastings & Co.* v. *Gloster*, 13 Nev. 279; *Vesey* v. *Benton*, 13 Nev. 285.)

*W. E. F. Deal*, for Respondent.

I.   The court did not err in sustaining respondents' objections to the testimony of appellant as to the transactions between her and Hampton, deceased.   The legislature has so amended the statute since the decision in *Crane* v. *Gloster* and *Vesey* v. *Benton* that those decisions are inapplicable to the facts in this case.

II.   The rules of evidence do not permit appellant to show the bill of sale to have been anything else except what it was, without some allegation of fraud or mistake, and counsel for appellant claimed nothing of the kind.   (*Menzies* v. *Kennedy*, 9 Nev. 159; *Saunders* v. *Stewart*, 7 Nev. 200; *Feusier* v. *Sneath*, 3 Nev. 120; *Bingham* v. *Thompson*, 4 Nev. 224; *Berthold* v. *Fox*, 97 Am. Dec. 245; *Adair* v. *Adair*, 71 Am. Dec. 779.)

By the Court, MURPHY, J.:

This action was brought by W. S. Gage, as surviving partner of the firm composed of Clark P. Hubbell, J. C. Hampton and W. S. Gage, doing business under the firm name of J. C. Hampton & Co., to foreclose a mortgage executed by M. A. Phillips, the defendant, to J. C. Hampton & Co., of Virginia City, Nev., dated on the 16th day of May, 1887.   The complaint contains the usual allegations in actions of the kind.

In her answer the defendant avers:   " That on or about the ———— day of May, 1888, said defendant was the owner of a certain lot of furniture, carpets, bedding, stoves, and all necessary articles for the complete furnishing of a lodging-house, which was then in a lodging-house situated on B street, in Virginia City, Nev.,   *   *   *   and which said lot and lodging

house were then owned by said J. C. Hampton, now deceased, or by said firm of J. C. Hampton & Co. That on or about said ——— day of May, 1888, this defendant and said J. C. Hampton, now deceased, agreed together that said J. C. Hampton should take said furniture, bedding, carpets, stoves, and other articles then in said lodging-house, in full satisfaction of the note and mortgage mentioned in plaintiff's complaint. That said J. C. Hampton, now deceased, then, either for himself or for said J. C. Hampton & Co., did take said furniture and property in full satisfaction of said note and mortgage. That said J. C. Hampton died without satisfying said mortgage, or the record thereof. That said furniture and other property was of the reasonable worth and value of three thousand dollars." The plaintiff introduced his note and mortgage in evidence, and rested his case in chief.

It appears from the transcript that in the year 1881 the defendant borrowed a large sum of money from J. C. Hampton & Co., giving as security for the payment thereof notes secured by mortgages on property situated in Virginia City and Carson City, Nevada. That the furniture now in controversy was in a house in Virginia City, and has never been removed therefrom. That on the 16th day of May, 1887, J. C. Hampton, for the firm of J. C. Hampton & Co., had a settlement of accounts with the defendant, and it appears that on such settlement defendant owed the firm of J. C. Hampton & Co. about twelve thousand dollars. The defendant gave to J. C. Hampton a deed to the Virginia City property; consideration, one thousand dollars. She also executed and delivered to J. C. Hampton & Co., at the same time and place, and as a part of the same transaction, the note and mortgage sued upon, and a bill of sale of all the furniture in the Virginia City house. The defendant now swears, that, at the time she signed the bill of sale, she did not know what she was signing, as she had no glasses with her, and, as she had borrowed one hundred and fifty dollars from Hampton on the day she signed the papers, she supposed she was signing a note for that amount.

The defendant also testified, or attempted to, that she had a conversation and some correspondence with J. C. Hampton, in which he agreed to take the furniture in payment of the two thousand dollars indebtedness, and enter satisfaction of the mortgage sued upon.

The letters claimed to have been received from Hampton could not be found, and the defendant called a Mrs. C. H. Robinson as a witness, and offered to prove by her the contents of the letters written by her for Mrs. Phillips to Hampton, and Hampton's letters in reply, which it appears that Mrs. Robinson had read to the defendant; to all of which counsel for the plaintiff objected, on the ground and for the reason that all the correspondence was had before the note and mortgage were given. The court sustained the objection, and the defendant excepted to the ruling.

The testimony was inadmissible for the purpose offered. When parties reduce their contract to writing, all oral negotiations and agreements are merged in the writing, and the instrument must be treated as containing the whole contract, and parol proof is not admissible to alter its terms, or to show that, instead of being absolute, as it purports to be, it was in reality conditional, unless the party attacking the instrument can establish fraud or mistake in its execution.

The case of *Stewart* v. *Babbs*, 120 Ind. 571, is directly in point on this case. In that case the defendants purchased land. They gave notes and mortgages to secure the payment of the purchase money. On the trial of the case the defendants gave testimony changing the terms of the deed and mortgage. On appeal, the supreme court said: "It is well settled, by a long line of decisions of this court, that, when the parties reduce their contract to writing, all oral negotiations and stipulations are merged therein." (See, also, *Wight* v. *Shelby Railroad Co.,* 16 B. Mon. 4; *Fairbanks* v. *Metcalf*, 8 Mass. 238; *Ward* v. *Lewis*, 4 Pick. 520; *Worrall* v. *Munn*, 5 N. Y. 238; *Clark* v. *Gifford*, 10 Wend. 313; *Gilbert* v. *Insurance Co.*, 23 Wend. 45; *De Witt* v. *Berry*, 10 Sup. Ct. Rep. 536; *Polhill* v. *Brown*, 10 S E. Rep. 921; *Land Co.* v. *Dromgoole*, 7 South. Rep. 444; *Bruns* v. *Schreiber*, 45 N. W. Rep. 861; *Northwestern Fuel Co.* v. *Bruns*, Id. 699; *Hills* v. *Rix*, 46 N. W. Rep. 297.)

There is neither fraud nor mistake charged in the answer, and the attorney for the defendant stated in open court, "that they did not claim that there was any fraud in the transactions." The mere statement of the defendant "that she did not know what she was signing, when she signed the bill of sale," is no excuse in law. In order to be of any benefit to her, she should have set out in her answer that the paper introduced in evi-

dence was obtained by misrepresentations of its contents, and that the misrepresentations were false, and that she h d exercised due diligence to guard against fraud; and, to excuse a want of due care and diligence in a case of this kind, the defendant should show that there was a known trust and confidence between the parties to the instrument, and that the relationship of the parties was such as to justify the existence of such trust and confidence.

Defendant attempted to prove that in the spring of 1888, and prior to the death of Hampton, she had a conversation with him, wherein he agreed to take the furniture in full payment of the amount due on the note and mortgage, to-wit, two thousand dollars, and enter satisfaction of the same.　To the introduction of this testimony plaintiff objected to the defendant testifying to any conversation had between herself and Hampton in relation to their business transaction, for the reason that the other party to the transaction was dead.　The defendant admitted that all her dealings and conversations were with J. C. Hampton.

The court sustained the objection, and this, defendant claims to be error, and in support thereof rely upon the authority of the cases of *Crane, Hastings & Co.* v. *Gloster*, 13 Nev. 279; and *Vesey* v. *Benton*, Id. 284.

In the statute of 1864, p. 77, we had an act of the legislature defining who should and who should not be witnesses.　Under that statute the decision in the case of *Roney* v. *Buckland*, 4 Nev. 45, was rendered, in which this court held : " When a surviving partner is sued for a loan for the use of the firm made to the deceased partner, and of the particulars of which the deceased partner only was cognizant, the plaintiff is not a competent witness in his own behalf."　In 1869, at the time of the adoption of our civil practice act (either by mistake or design), the following paragraph was omitted from the act :　" Except where the adverse party is dead, or where the opposite party shall be the administrator or executor."　Under the act of 1869, the cases in 13 Nev. were decided, and each of these opinions were written by the judges under protest, and they did not hesitate to express their contempt of an act that required of them to affirm judgments, when such judgments had been obtained on the testimony of parties to a transaction, when the opposite parties, and the only persons who could testify or contradict their statements, were dead.

In the case of *Crane* v. *Gloster*, Justice Beatty, at page 281, said: "It appears, then, that the old law recognized two reasons for excluding the testimony of a party interested, while the present law recognizes but one.  Of the two principles of exclusion, the sounder and better has been rejected, and the more arbitrary and unreasonable retained.  The result is, that our law on this subject is about as bad as it could be made. The policy of sealing the lips of the surviving party to any transaction, when the opposite party, whether principal or agent, is dead, is sanctioned and approved by the statutes of several of the states.  *  *  *  We, however, have retained this rule in its most arbitrary form, and have abolished altogether the other rule, which invariably operated to the promotion of justice."  Hawley, C. J., in *Vesey* v. *Benton*, said:  "It seems proper, however, in view of the results reached in *Crane, Hastings & Co.* v. *Gloster*, ante, and in this case, to call the attention of the legislature to the crude and unsatisfactory provisions of the statute referred to.  The only object of incorporating any provision of exclusion is to prevent fraud and injustice."  Then, after commenting upon the facts in the two cases mentioned and the application of the statute, he says: "Thus, as will readily be seen, giving to the defendant in the former, and the plaintiff in the latter, case an undue and unfair advantage.  A statute that leads to such results is repugnant to every sense of justice and of right, and ought to be amended." It was amended by an act of the legislature of 1881 (Stat. 1881, p. 80), and reads as follows:  "No person shall be allowed to testify  *  *  *  when the other party to the transaction is dead, or when the opposite party to the action, or the person for whose immediate benefit the action or proceeding is prosecuted or defended, is the representative of a deceased person, when the facts to be proved transpired before the death of such deceased person."  Under the above statute, the defendant was not a competent witness to prove the conversations had between herself and Hampton.

She is prohibited from testifying as to any statement made by the deceased to her, or to any business transaction between herself and the deceased.   The statute has in view transactions between parties, one of whom had since died, and whose representative was engaged in a suit with the survivor.   As to such transaction neither party is allowed to testify.   The survivor should not,

because the mouth of the other party to the transaction is for ever closed. Therefore the rule as laid down in the case of *Roney* v. *Buckland*, 4 Nev. 55, is a clear exposition of the law as it then existed, and re-enacted in 1881, while the cases in 13 Nevada were a correct interpretation of the law at the time the decisions were rendered. The act of the legislature governing the cases being repealed, they are no longer authorities in actions such as the one under consideration. In support of the views herein expressed, we cite as authorities: *Wilcox* v. *Corwin*, 117 N. Y. 502; *Clift* v. *Moses*, 112 N. Y. 431; *Tuck* v. *Nelson*, 62 N. H. 471; *Parks* v. *Andrews*, 56 Hun. 393; *Kimble* v. *Carothers*, 81 Pa. St. 506; *Koehler* v. *Adler*, 91 N. Y. 657; *Shain* v. *Forbes*, 82 Cal. 583; *Parks* v. *Caudle*, 58 Tex. 221; *Dolan* v. *Dolan*, 7 South. Rep. 425; *Glover* v. *Thomas*, 12 S. W. Rep. 685; *Fulcher* v. *Mandell*, 10 S. E. Rep. 582; *Nesbitt* v. *Parrott*, Id. 590; *Patterson* v. *Martin*, Id. 820; *Gunther* v. *Bennett*, 19 Atl. Rep. 1048; *Gavin* v. *Bischoff*, 45 N. W. Rep. 306.

In the case of *Simpson* v. *Simpson*, 12 S. E. Rep. 450, plaintiff was permitted to testify that the sum of fifty dollars had been paid on the note and mortgage. The mortgagor and maker of the note was dead. The supreme court held " that the plaintiff was not a competent witness to prove what was, or was not paid; the proof necessarily concerned transactions with the deceased about which he could testify, and might testify, differently, if living, and we think he was rendered incompetent as a witness for any such purpose." Counsel for appellant, in their oral argument, in this court claimed, that, the action being prosecuted by Gage as surviving partner, the rule did not apply, and the defendant should have been permitted to testify. The act of the legislature under consideration in this case accomplishes the very purpose of its enactment, namely, it prevents living witnesses from establishing contracts, by their own evidence, as to personal transactions and communications with parties whose lips have been sealed by death.

The case of *Green* v. *Edick*, 56 N. Y. 613, was an action against the defendant, as surviving partner of the firm of Edick & Son. Upon the trial, plaintiff, as a witness in his own behalf, was allowed to testify to a conversation between himself and the deceased partner. Held to be error, and judgment reversed. (*Roney* v. *Buckland*, 4 Nev. 45; *Shain* v. *Forbes*, 82 Cal. 583; *Dolan* v. *Dolan*, 7 South. Rep. 426.)

There was no error in the ruling of the court in refusing the defendant permission to amend her answer: (1) The amendment was intended to vary the terms of a written contract, which was not permissible, in the face of the admission of the defendant that she did not claim there was any fraud in the transaction; and (2) the court stated that, if the defendant wanted to show that the bill of sale was intended as a mortgage, she could do so. There was no error in the court's refusal to make the finding asked for by the defendant. There is nothing in the case that would justify the making of any such finding. It therefore follows, from the views we have expressed, and from the authorities we have cited, that there was no error committed by the court in its rulings, and the claim of the appellant that there is no evidence to sustain the decree of the court is not well founded.

The judgment of the district court and the order refusing a new trial are affirmed.