Sherwood, J.
Various questions of interest arise
on this record, and will now be considered. These questions relate to the statute of frauds, ratification, estoppel, tenancy, and surrender. Of these in their order.
1. a. Relative to the statute of frauds, it may be said that the petition in substance and effect sets forth a contract of renting by plaintiffs to defendants of the premises for the term of fifteen months, at a rental of $300 per month payable monthly in advance, beginning April 1, 1891, and ending July 1, 1892, and the entry and occupation of the premises by defendants under that contract from the date first aforesaid until the date last aforesaid. The answer does not deny the contract *659 of renting, nor does it admit it and plead the statute' of frauds as a defense.
Now, the rule' is well settled in this state that where, in circumstances like the present, a party would take advantage of the statute of frauds, he must either deny the contract, or else admit it and plead the statute. Defendants were therefore in no position to successfully raise the invalidity, of the contract by reason of its nonconformity with that, statute. Wildbahn v. Robidoux, 11 Mo. 660; Hook v. Turner, 22 Mo. 333; Allen v. Richard, 83 Mo. 55.
b. But if defendants by the state of their pleading were in a condition to use the statute as a shield, they would be precluded from so doing, because the evidence shows that the contract was completely performed on the part of the plaintiffs by defendants being placed by the former in the possession of the premises and remaining there so long as they would. In such circumstances as these, though the contract be not in writing, the statute will be invoked in vain; the complete performance of the contract by one contracting party forecloses his adversary from interposing the statute of frauds as a defense. Blanton v. Knox, 3 Mo. 342; Pitcher v. Wilson, 5 Mo. 48; Suggett’s Adm’r v. Cason’s Adm’r, 26 Mo. 221; Self v. Cordell, 45 Mo. 345; McConnell v. Brayner, 63 Mo. 461.
c. Nor will it do to urge that plaintiffs could have expelled defendants prior to the expiration of the fifteen months by giving them thirty days’, notice. In an instance similar to the present one, in all essential particulars, and where likewise a defense of the statute of frauds was interposed in an action for rent, it was said in argument for the defendant that the contract on the lessor’s part was not yet completed, that there yet remained a duty on his part to permit the lessee to *660 enjoy the premises for the remaining two years, that portion of the lease created by parol, and in replying to this, Philips, Commissioner, aptly said: “This is simply a refinement. He had the possession, and did not enjoy the fruit because he would not pluck it.” Winters v. Cherry, 78 Mo. 344.
d. But in addition to the .foregoing reasons, others readily occur why the defense of the statute of frauds must prove unavailing. That statute does not require that a lease or indeed any instrument should be under seal. Admit, then, that plaintiffs’ agents had no authority to bind them by a sealed instrument, still the unauthorized and unnecessary seal may be treated as superfluous and disregarded, and the sealed instrument deemed an unsealed one, and may be ratified as asimple contract in writing. Mechem, Agency,, secs. 95 and 141 and cases cited.
And that a simple contract in writing made without authority is susceptible of oral ratification no one questions. In illustration of this point is the early case of Maclean v. Dunn, 4 Bing. 722, where Lord Chief Justice Best said: “It has been argued, that the subsequent adoption of the contract by Dunn will not take this case out of the operation of the statute of frauds; and it has been insisted, that the agent should have his authority at the time the contract is entered into. If such had been the intention of the legislature, it would have been expressed more clearly, but the statute only requires some note or memorandum in writing, to be signed by the party to be charged, or his agent therewnto lawfully authorised; leaving us to the rules of common law, as to the mode in which the agent is to receive his authority. Now, in all other cases, a subsequent sanction is considered the same thing in effect as assent at the time. Omnis ratihabitio retrotrahitur et mandato aequiqgaratur. And in my opin *661 ion, the subsequent sanction of a contract signed by an agent, takes it out of the operation of the statute more satisfactorily than an authority ■ given beforehand. Where the authority is given beforehand, the party must trust to his agent; if it be given subsequently to the contract, the party knows that all has been done according to his wishes.” .
e. There are authorities also which hold that one partner may ratify by parol an act under seal done by his copartner. Gwinn v. Rooker, 24 Mo. 290; 3 Kent, Com. [13 Ed.] 49; Story, Part., sec. 117.
/. The doctrine has in some instances been ■extended beyond the limits here mentioned, so as to ■embrace cases where one person not sustaining the relation of partner to another may execute an instrument under seal and the same maybe ratified by matter in pais with like effect as were they partners. This is the rule announced in Massachusetts. Holbrook v. Chamberlin, 116 Mass. 155 and cases cited.
g. In Worrall v. Munn, 1 Seld. 229, after an elaborate review of the authorities, it is there said: “These authorities show that there is no distinction between partners and other persons in the application of the modern rule, that wherever an instrument would be effectual without a seal, it would be valid and bind-on the principal, although executed under seal by an agent without authority by deed, if authorized by a previous parol authority, or subsequently ratified or adopted.by parol.” 1 Seld. loe. cit. 243 and cases cited. See, also, Hunter v. Parker, 7 M. & W. 322; State v. Spartansburg, etc., Railroad, 8 S. C. 129; Hammond v. Hannin, 21 Mich. 374; Adams v. Power, 52 Miss. 828; State v. Shaw, 28 Iowa, 67.
As the result of these authorities, it should be held that the act of plaintiffs in putting defendants into possession of the premises, which they did on April 1, *662 1891, and the acceptance by them of rent for several months thereafter from defendants in conformity to the written lease, was an ample ratification of that instrument.
hi Besides, the old lease having expired by its own terms on April 1, 1891, defendants were put into possession under and by virtue of the new lease, and enjoyed all the advantages they could have received had the new lease been formally valid in every particular; it does not lie in their mouths to denounce as invalid a lease under and by virtue1 of which those advantages were obtained. Holbrook v. Chamberlin, supra, loc. cit. 161; State v. Shaw, 28 Iowa, loc. cit. 75.
2. a. Furthermore, defendants are liable to plaintiffs for the rent of the premises for the residue of term embraced in the new lease, on other grounds, because, first, they only served notice of their intention to quit on Peltzer alone. The service on Bless would doubtless have been good, had the letter addressed to him through the mail been stamped; but there is no evidence that this was done, and hence there is no prima facie evidence of service of notice on him. Briggs v. Hervey, 130 Mass. 187; because, second, though the notice was served on Peltzer, yet defendants did not comply with its terms; they did not surrender the possession of the .keys only to the first and second stories, and these keys were returned to them, leaving the third and fourth stories in possession of Mrs. Carpenter, their sublessee, whom they had placed in possession of those stories at or about the time of the creation or commencement of the new lease.
Touching the duty of a tenant to surrender the entire premises to his landlord, it is said by an author of eminent merit: “If he has let the whole or any part of the premises to an undertenant, who is in possession at the termination of the lease, he must get him *663 out; otherwise, lie will not be in a situation to render that complete possession to which the landlord is entitled. And unless the entire possession is delivered up, the tenant’s responsibility for rent will continue, although it may have become impossible for him to give the landlord full possession, in consequence of the obstinacy or ill-will of an undertenant, to whom he has let a part or the whole of the premises, and who refuses to quit; for in such case the landlord may refuse to accept possession, and hold the original tenant liable.” Taylor, Land, and Ten., sec. 524. See, also, Lubetkin v. Brewing Co., 21 Abb. New Cas. 304. Eor where the lessee puts another in possession who holds over, it shall be considered as the holding over of the lessee. Brewer v. Knapp, 1 Pick. 335.
b. Not only did defendants fail to surrender possession of the entire premises, but they did not even so much as serve notice on their subtenant, Mrs. Carpenter, to vacate the premises, to wit, the third and fourth stories, nor did they serve any paper at all on her until about a month after they had abandoned the premises, and that did not amount to a notice to quit. That paper and its indorsement are as follow:
“Kansas City, Mo., October 29,1891. “Mrs. Margaret W. and Mr. Marion Carpenter, No. 615 Main street, Kansas City, Mo.
“Me. and Mes. Caebentee: We recall to your mind these facts:
“First. That we informed you that we had terminated our tenancy and occupancy, by written notice to the owners'of No. 615 Main st., Kansas City, Mo.
“Second. That we informed you that our power over and control of any part of said building terminated September 30, 1891, under our notice, and that you-must look elsewhere than to us for permission to occupy any part thereof after September 30, 1891.
*664 “Third. That we informed Mrs. M. W. Carpenter of the names of the owners and that she must thereafter (after1 September 30, 1891) look to said owners for the right to occupy said building and that she assented thereto.
“Fourth. This is for the purpose of recalling our understanding and agreement had in August and September, 1891, and putting it in writing.
“We are not and have not been your landlords in that building since September 30, 1891. The owners of the building, Messrs. Peter Bless and Theodore Peltzer, álone have any claim or right therein or over you so far as we know-. Respectfully yours,
“J. W. Jenkins’ Sons.”
Indorsed on the back as follows:
“Kansas City, Mo., September 30, 1891.
“In consideration of one dollar received by us be it known that any and all right, legal and equitable, which we or any of us may have, or may be supposed to have, in or to No. 615 Main street, Kansas City, Mo.,, we hereby deed to Peter Bless and Theodore Peltzer, including any rights we or any of us may have as landlords heretofore of Margaret W. and Marion Carpenter, photographers in said building.
“Witness our hands and seals this thirtieth day of September, 1891. This is to be read in connection with the within disclaimer of any right held by us.
“J. W. Jenkins, [seal]
“C. W. Jenkins, [seal]
“F. B. Jenkins, [seal]”
c. Of course the service of such unique papers as these was but a futile and fumbling attempt to escape liability.
d. Even had Mrs. Carpenter “agreed” to pay rent to plaintiffs, and she testified she did not, this would not have exonerated defendants from liability therefor *665 unless plaintiffs had likewise agreed to accept her as their tenant; but this they did not do; consequently defendants still remained liable. Clemens v. Broomfield, 19 Mo. 118; Taylor on Landlord and Tenant, secs. 514, 515, 516, 517.
III. In consequence of the foregoing facts, the trial court did right in giving a peremptory instruction to find for plaintiffs, and in refusing instructions asked by defendants opposed to the views hereinbefore expressed.
Discovering no material error in the record, the judgment will be affirmed.
All concur.