RUTH McGINNIS v. THOMAS McGINNIS, Appellant.

Division Two, April 26, 1918.

1. **ASSIGNMENT: Cause of Action.** An action for an accounting by one partner against the other is assignable. The cause of action would have survived and passed to the personal representative of the partner assigning it had he not assigned it, and that is the test of assignability of causes of action.

2. **PARTNERSHIP AGREEMENT: Statute of Frauds: Full Performance.** Whether or not an oral agreement to lease and sublease real estate, entered into between two partners, by the terms of which all profits realized should be divided between them in the

proportion of forty per cent to one and sixty to the other, was within the Statute of Frauds, is of no moment in the suit by one partner's assignee for an accounting, if it has been fully performed.

3. **RECEIPT:** Accounting. A receipt, given by one partner to another, in which he acknowledges settlement in full to date, may be shown to be a mistake. If he had no actual knowledge of the matter, and signed it upon the erroneous statement of the other that the amount stated in it was the full amount due him, and the other did have correct knowledge and promised to send later a detailed statement to verify his erroneous claim, neither the signer of the receipt nor his assignee is bound, in the suit for an accounting, by the receipt.

4. **ACCOUNTING:** Unexplained Items: Burden. The burden is on the partner who received all the money and had charge of the business to explain and establish the justness of unusual items of expense shown by a statement furnished by him in response to the court's requirement.

5. **AMENDED PLEADING:** Refusal: Accounting: After Referee's Report. The court does not abuse its discretion in refusing to permit defendant to file an amended answer which materially changes the whole aspect of the case and brings in a defense known from the start, after the case is practically concluded. Where in a suit for an accounting brought by the assignee of one partner against the other, for the agreed percentage of the profits arising from the leasing and subletting of real estate, the defendant filed an answer pleading (1) that there never was any agreement between him and said assignor concerning the transactions mentioned and (2) that he had settled with said assignor for all claims he had or might have against him, the court did not abuse its discretion in refusing to permit defendant, after the matter had been referred to a referee and after the referee had heard the evidence and made his report, to file an amended answer in which he pleaded that the parties did enter into the agreement, but that it was illegal and unlawful because it was the purpose and intention of the parties to use the property for illegal and immoral purposes.

Appeal from St. Louis City Circuit Court.—*Hon. Karl Kimmel*, Judge.

AFFIRMED.

*Hall & Dame* and *Wm. H. O'Brien* for appellant.

(1) Plaintiff acquired no right under the alleged assignment from Louis A. McGinnis to maintain an action against Thomas McGinnis for accounting of profits from a joint adventure of Louis A. McGinnis

and Thomas McGinnis. Such right was not assignable. 1 Ency. Pl. & Pr. 99; 1 R. C. L., 225; Daunes v. Worch, 28 R. I. 99, 13 Ann. Cas. 647; 4 Cyc. 22, 103; Whittle v. Skinner, 23 Vt. 531; Jones v. Babcock, 15 Mo. App. 149; C. & A. R. Co. v. Maher, 91 Ill. 312; Landin v. McCarthy, 45 Mo. 106. (2) The alleged contract which plaintiff sought to enforce is within the Statute of Frauds and being wholly oral is not enforceable. (a) The contract was not to be performed within one year. Riegert v. Coal & Coke Co., 217 Mo. 142. (b) It is a contract for interest in real property. Sec. 2783, R. S. 1909; Tapley v. Ogle, 162 Mo. 190; Allen v. Richard, 83 Mo. 55; Clawater v. Tetherow, 27 Mo. 241; Taylor v. Von Schrader, 107 Mo. 206. (3) Defendant's demurrer at close of plaintiff's case should have been sustained also for the reason that at the trial plaintiff failed to show that anything was due plaintiff or her assignor or that defendant had received any profit from the adventure in question. Simmons v. Oil Co., 71 N. J. Eq. 174; State v. Denton, 229 Mo. 187. (4) Complete settlement of any claim which Louis A. McGinnis may have had was made by the receipt settlement of November 4, 1908. 17 Cyc. 633; O'Shea v. Lehr, 182 Mo. App. 676; Helling v. N. O. of H., 29 Mo. App. 309; Tanner v. Merrill, 108 Mich. 58, 31 L. R. A. 171; Perkins v. Headley, 49 Mo. App. 556. (b) The decree for accounting is erroneous in failing to give the proper and legal effect to the release receipt executed by Louis A. McGinnis on November 4, 1907. The release receipt at least was a settlement of all claims up to its date. Authorities above. (5) The court erred in approving the referee's report. (a) Because the referee failed to allow items in favor of defendant, proven by uncontroverted testimony, to-wit: expenses for sub-agent, and for repairs, itemized in defendant's statement as "vouchers" and "x x." (b) Because the referee refused to accept the statement of account filed by defendant as a whole, but received in evidence only the parts favorable to plaintiff. Corpus Juris, 639; 17 Cyc. 464; Mulloy v. Mulloy, 131 Mo. App. 659; Todd v. Terry,

26 Mo. App. 598. (c) The referee excluded competent testimony offered by defendant which if admitted would have disclosed the illegility of the contract and transaction. Authorities under next point. (6) Defendant should have been allowed to file his amended answer setting up the illegality of the contract and transaction forming the basis of the suit, and the whole action should have been, and should be, dismissed because tainted with illegality. Ashbrock v. Roselle Dale, 27 Mo. App. 649; Givens v. Van Studdiford, 86 Mo. 156; Sprague v. Rooney, 104 Mo. 349; Ullman v. Fair Assn., 167 Mo. 273; Fair Assn. v. Carmody, 151 Mo. 573; Morrison v. Judin, 145 Mo. 282; Hagerty v. Ice Co., 143 Mo. 238; Davis et al. v. Tandy, 107 Mo. App. 437; Banking Co. v. Loomis, 140 Mo. App. 62; McDermott v. Sedgwick, 140 Mo. 172.

*Kinealy & Kinealy* for respondent.

(1) Any right growing out of contract or which is descendable may be assigned. 5 C. J. 850; 4 Cyc. 23; Remmers v. Remmers, 217 Mo. 54; Sanguinet v. Webster, 153 Mo. 343; Chouteau v. Broughton, 100 Mo. 406; Steele v. Braxier, 139 Mo. App. 319; State v. Heckart, 49 Mo. App. 280. (2) The Statute of Frauds has no bearing on this case because: (a) The agreement has been fully performed. Welch v. Mann, 193 Mo. 304; Maupin v. Railway, 171 Mo. 187; Bank v. Read, 131 Mo. 553; Bless v. Jenkins, 129 Mo. 647; Ordelheide v. Traube, 183 Mo. App. 363; Sloan v. Paramore, 181 Mo. App. 611. (b) There was no understanding that the agreement should not be carried out within a year. Keller v. Mayer, F. Co., 153 Mo. App. 120; May v. Moore, 99 Mo. App. 27; Wyma v. Followill, 98 Mo. App. 463; Biest v. Versteeg Shoe Co., 97 Mo. App. 137; Harrington v. Railway, 60 Mo. App. 223. (3) To require a trustee to account it is not necessary to prove that the accounting will show something due. Nothing but the accounting may be able to do that. Broussard v. Mason, 187 Mo. App. 281. (4) A receipt in full has no contractual elements and is subject to explanation. Sawyer v.

Walker, 204 Mo. 133; Aull v. St. Louis Trust Co., 149 Mo. 1; Cole Co. v. Dallmeyer, 100 Mo. 57; Edwards v. Smith, 63 Mo. 119; Weatherford v. Farrar, 18 Mo. 474. (5) Partners stand in a fiduciary relation and owe the utmost good faith to each other. 22 Am. & Eng. Ency. Law (2 Ed.), 114; Pomeroy v. Benton, 57 Mo. 531; Filburn v. Ivers, 92 Mo. 388. (6) It is the duty of a trustee to keep clear and accurate accounts and if he does not, all doubts and obscurities are to be taken adversely to him. 2 Perry on Trusts, sec. 821; 39 Cyc. 464; 30 Cyc. 742; Hoke v. Coach, 114 Mich. 558; Cockerham v. Bosley, 52 La. Ann. 65. (7) When a trustee is called upon to account, the burden is on him to prove the credits he claims. 1 Cyc. 448; 1 C. J. 651; 2 Am. & Eng. Ency. Law (2 Ed.), 1126; Campbell v. Coquard, 93 Mo. 474; Kirchner v. Kirchner, 113 Mo. 290; State ex rel. v. Jones, 131 Mo. 194; Thatcher v. Hayes, 54 Mich. 184; Railroad v. Sittel, 21 Okla. 695; Dettering v. Norstrom, 148 Fed. 181. (8) Defendant as trustee in charge of the property was entitled to credit only for such sums as were necessarily paid out by him in the usual and ordinary management of the property. 2 Perry on Trusts, sec. 910; 28 Am. & Eng. Ency. Law, p. 1089; Tracy v. Railroad, 13 Mo. App. 295; Inglis v. Floyd, 33 Mo. App. 565; Condict v. Flower, 47 Mo. App. 514; Veltum v. Koehler, 85 Minn. 125. (9) After the interlocutory decree had been entered and the accounting had, it was too late for defendant to file an amended answer setting up a new defense to the right of plaintiff to demand an accounting. Carter v. Dilley, 167 Mo. 564; Gale v. Foss, 47 Mo. 276; Laughlin v. Leigh, 226 Mo. 620; Weed Co. v. Philbrick, 70 Mo. 646. Moreover the alleged new defense was not good in law. 9 Cyc. 559; Hatch v. Hamson, 46 Mo. App. 323.

WILLIAMS, J.—This is an action for an accounting, brought by plaintiff as the assignee of one partner, against the other partner who is alleged to have re-

274 Sup.—19.

ceived the net profits from the partnership business. Trial was had in the circuit court of the city of St. Louis, which resulted in a judgment in favor of plaintiff in the sum of $13,434.95. Thereupon defendant duly appealed to this court.

The petition alleges:

1. That on September 1, 1905, one Louis A. McGinnis (the father and assignor of the plaintiff) and the defendant entered into an agreement to the effect that they should enter into the business of leasing rental property in the city of Chicago, which was suitable for subleasing and which could be leased by them upon terms which would yield to them a profit when sublet, and that all profits so realized should be divided between them in the proportion of forty per cent to said Louis A. McGinnis and sixty per cent to defendant.

2. That in pursuance of said agreement they procured leases on the O'Malley premises known as Nos. 101 to 113 West Twenty-First Street and on the property known as the Shaughnessy property at 2112 Armour Avenue, both in the city of Chicago, State of Illinois; that said leases were taken in the name of third parties; that in procuring the O'Malley lease the partners were required to deposit as security the sum of $3000, forty per cent of which was paid by Louis A. McGinnis and sixty per cent by defendant; the O'Malley lease was for a term of ten years from May 1, 1906, but was by mutual consent of the parties on May 1, 1913, surrendered back to the lessor; that the Shaughnessy lease was for a term from May 1, 1906, to April 30, 1911; that the lessees entered into possession of said leasehold premises and sublet the same during the aforesaid respective terms, and that the defendant collected all the rents from said lessees, paid the rent due therefrom to the lessor and all expenses and repairs and upkeep of the property; that defendant derived from said business large net profits, to-wit, from the O'Malley property a sum in excess of $18,000 as net profit, and

from the Shaughnessy property a sum in excess of
$4500; that said Louis A. McGinnis under and by vir-
tue of said agreement became and was entitled to re-
ceive forty per cent of said net profits, but that the
defendant in violation of said agreement denied that
said Louis A. McGinnis had any interest in said
leaseholds or profits and has refused to pay said Louis
A. McGinnis any part thereof, and has refused to render
a statement of account of the same to said Louis A.
McGinnis.

3. That on the first day of October, 1912, said
Louis A. McGinnis assigned to the plaintiff herein all his
claim or cause of action against the defendant, including
the amounts due him from the defendant from the net
profits of the business aforesaid and also the right to an
accounting therefor.

4. The petition prays that ''defendant be required
to account to plaintiff for all amounts received and dis-
bursed by defendant for or on account of said proper-
ties under his said agreement with the said Louis A. Mc-
Ginnis and upon such accounting plaintiff be granted
judgment for forty per cent of the net profits realized
out of said properties.''

The answer contains a general denial, and pleaded
a settlement between the defendant and Louis A. Mc-
Ginnis on November 4, 1908, as evidenced by the follow-
ing receipt, to-wit:—

''November 4, 1908. Received from Thomas Mc-
Ginnis eleven hundred fifty dollars as a payment in full
of all demands of every kind and character up to this
date, November 4, 1908.

''L. A. McGinnis.''

Upon the trial plaintiff offered evidence tending
to sustantiate the allegations of the petition and the
court entered an interlocutory decree for an accounting
as prayed in the petition. By consent of the parties
the court appointed Joseph T. Davis as referee to take
and state the account. Hearing was had before the re-
feree and the referee made his report which was ap-
proved by the court and judgment was entered thereon.

Before the matter was heard by the referee, the court ordered the defendant to file a statement of his receipts and disbursements in connection with the above described leases. Defendant complied with this request and filed a statement which showed that the amount of rents collected was $70,491.60 and that the expenditures for the same period amounted to $65,401.36, leaving a balance of profits in his hands of $5090.24. This statement showed the receipts and expenditures for each month during the entire period that they had possession of the leasehold premises. The following, which shows the receipts and expenditures for the month of November, 1906, may be used as a type for all the months.    It was as follows:

|  | Receipts | Disbursements. |
|---|---|---|
| November  O'Malley | 693 | |
| Thornton | 140 | |
| Ground rent O'Malley | | 500 |
| Ground rent Thornton | | 75 |
| x     x     O'Malley | | 150 |
| x     x     Thornton | | 50 |
| Vouchers O'Malley | | 48.65 |
| Vouchers  Thornton | | 7.00 |

The word O'Malley in the statement refers to the O'Malley property and the word Thornton has reference to the Shaughnessy property.

Plaintiff filed exceptions to the account filed by the defendant admitting that the receipts shown thereon were correct and that defendant had paid out the ground rents therein mentioned but denied that defendant was entitled to credit for the items marked "x x" and "vouchers."

The evidence taken before the referee may be summarized as follows:

Plaintiff offered in evidence the statement of receipts as set forth in the statement of account theretofore filed by defendant.

Witness Louis A. McGinnis testified concerning the agreement and the procurement of the leases as mentioned in the petition. The leases were introduced in evidence. This witness testified that he paid the first

three months ground rent under the O'Malley lease, amounting to $1500; that defendant was put in charge of the two leases and that defendant made arrangements with George G. Newbury & Co., a real estate firm in Chicago, to manage the property and collect the rents. A part of defendant's deposition was offered by plaintiff to the effect that the $3000 originally deposited on the O'Malley lease was forfeited to the lessor when the lease was surrendered, but that the defendant collected interest on this deposit during the life of the lease in accordance with the terms thereof.

Witness Louis A. McGinnis further testified that the rental of the property was turned over to Newbury & Company by mutual consent of the partners, and that Walter H. McDonald, connected with the firm of Newbury & Co., had the active management of the property for that company; the witness states that in 1906 he asked defendant for his share of the profits, and again asked the defendant in 1907 after the defendant had returned from a trip to Arizona; that defendant was in the habit of going away for six or seven months of each years. The witness finally met defendant by arrangement on November 4, 1908, and gave to him the receipt mentioned in the answer and received from him at that time the sum therein mentioned. In explanation of the giving of the receipt the witness states that the defendant told him that $1150 was his share of the profits; that he told defendant that there should be more coming to him, and that the defendant insisted that that was all and promised to send him a statement of the account showing the above amount due. That he took defendant's word as to the correctness of the amount and signed the receipt. Afterwards in May, 1910, the witness met defendant in St. Louis and the witness asked for an accounting from the defendant, but the defendant denied that he owed him anything and walked away.

The evidence upon the part of defendant was substantially as follows:

Defendant offered in evidence the depositions of four or five witnesses taken in Chicago to the effect

that these leasehold premises consisted of stores and flats and were partly occupied as saloons, gambling houses and brothels, and that Louis A. McGinnis knew for what purposes the property was used. This evidence was excluded by the referee.

The deposition of Walter McDonald was introduced by defendant. The witness testified that he was connected with Newbury & Company from 1905 to 1915, and that he was now the vice-president of the corporation by the same name; that he knew the leasehold premises here in question and had charge of the subletting of the property for Newbury & Company during the times hereinbefore mentioned; that the property was kept in good repair, water taxes were paid and a new sidewalk was constructed and general repairs made, such as were necessary for rental property. The witness said that he could not state off hand the total amount of rent received from the property, but he had furnished a statement at one time concerning the same. That for months it brought in gross rental of $900 and on other months it did not bring in enough to pay the ground rent. That he turned over the rents of said property to the defendant, that is, he turned over the net amount after deducting certain expenses. That his commission for collecting rents was four per cent of the gross. That a sub-agent was paid at the sum of $150 per month on the O'Malley property and $50 per month on the Shaughnessy property. On the cross-examination this witness testified: "The name of the sub-agent was Joe Marshall. That amount was not paid him for collecting rents exactly; I know what it was paid to him for; it was paid to him for a general supervision of the block which he looked after. He kept me informed of the people that were looking for locations; of people that were about to move out; of people that were getting 'weak-kneed.' In other words, he kept me fully advised and informed as to the conditions down there as much as if I lived there in the premises. I paid him $150 a month for the purpose of keep-

ing me posted as to the block and for other services; as to other services, at times he advanced money to tenants that were behind and kept the place filled  .  .  . The same man acted as sub-agent for the Shaughnessy property, and for his services we paid him $50 per month.  .  .  .  I paid this sub-agent, Joe Marshall, myself. Paid him cash; didn't get any receipts; did business with money only.''

This witness further testified on cross-examination that the ledger account kept by Newbury & Company showing the transactions concerning this property were destroyed about the same time the company was incorporated in March, 1912; at that time the old ledgers were sold to a paper mill; that the witness furnished a statement of these collections and expenditures shortly before the books were destroyed; that he made the copy of the statement himself and furnished it to the defendant.

The deposition of defendant, Thomas McGinnis, was offered in evidence by the defendant, wherein he stated that he was unable to ''answer exactly as to how much money he had received as rent from the O'Malley property,'' but that he thought the total profit after deducting the $3000 forfeit was about $2000 on both properties.  That Mr. McDonald rendered him an itemized statement covering the entire period as to both properties.  The witness stated that he never kept a book account in his life.  On cross-examination he testified that each month he looked over the statement of expenditures for this property and then destroyed the statement.  The witness testified that he authorized Newbury & Company to employ Joe Marshall as sub-agent for the O'Malley property, but that he did not order them to employ him on the Shaughnessy property.

In rebuttal, Louis A. McGinnis testified that he had never authorized any one to pay Marshall as sub-agent of the property and had no knowledge of those payments; that on October 2, 1911, he examined the books

of Newbury & Company with reference to the rents and disbursements concerning these two leases, and that at that time items "x x" and "vouchers" did not appear upon the books. That he made the copy of the net balances shown by the books at that time. This memorandum was offered in evidence. Witness stated that the defendant consented that he could go and take this memorandum from the books at the time he did so. At that time a suit was pending between the two parties in Chicago concerning this same matter, but that the suit was afterwards dismissed. This memorandum which begins with May, 1906, and goes down to and including August, 1911, shows a total profit of $16,651.52

On March 8, 1915, the court overruled defendant's application to file an amended answer. The application to file the amended answer had been made at the December, 1914, term. The exact date is not given. This was after the case had been heard by the referee and at a time when the exceptions to the referee's report were pending before the court. The amended answer undertook to set up the additional defense that the agreement between Louis A. McGinnis and defendant was for the purpose of carrying on an illegitimate and immoral business, and that it was the purpose and intention of said parties by said agreement to sublet said property to persons "to conduct brothels, houses of ill fame and of prostitution and gambling places, and that the said use was made of said leases, premises and property," and that plaintiff ought not therefore to be permitted to maintain this suit.

I. Appellant contends that the rights of Louis A. McGinnis in and to the net profits in the hands of the defendant, the other partner, and the incidental right to an action to recover the same, were not assignable and hence the plaintiff cannot maintain this suit.

Assignment of Cause of Action.

We are unable to agree with this contention.

The well established general rule, concerning the assignment of causes of action, which has long been in effect in this State, is stated in Snyder v. Railroad, 86 Mo. 613, l. c. 616, as follows: "The test to be applied in determining the assignability of causes of action is whether the cause of action would survive and pass to the personal representative of a decedent. If it would, it is transferable by the direct act of the parties. If it would not, it is not assignable."

Under the present situation, had the death of Louis A. McGinnis occurred prior to the assignment, there can be no doubt but that his personal representative could have maintained the present action. We find nothing in the situation here presented which should prevent the application of the above announced rule.

II. It is further contended that the agreement between Louis. A. and Thomas McGinnis was within the Statute of Frauds and that since the contract was not in writing its terms cannot now be enforced.

**Oral Agreement.**

Whether the contract was of such character as to bring it within the Statute of Frauds we need not now determine. This, for the reason that, even though it be conceded *arguendo* that it was such a contract, yet since it has been fully performed, at least by Louis A. McGinnis, it is for that reason now removed from the operation of the statute. [Bless v. Jenkins, 129 Mo. 647; Bank v. Read, 131 Mo. 553.]

III. It is contended that the court erred in failing to hold that the receipt executed by Louis A. McGinnis to Thomas McGinnis on November 4, 1907, was a settlement in full of all claims to that date.

**Receipt.**

From the evidence, which was admitted without objection, it appears that Louis A. McGinnis signed this receipt relying upon the erroneous statement of Thomas McGinnis that the amount stated in the receipt was the full amount due him at that date. Thomas McGinnis

then promised to later send to Louis A. McGinnis a statement of the account to verify his above statement. Louis A. McGinnis had no knowledge of the matter at that time other than that told him by Thomas Mc-Ginnis. The latter did have correct knowledge of the matters about which he undertook to inform his associate, because he had received from the rental agents the net profits derived from the subletting of the leasehold premises. Under those circumstances neither Louis A. McGinnis nor his assignee, this plaintiff, is bound by the terms of the receipt. [Sawyer v. Walker, 204 Mo. 133, l. c. 159-160; Aull v. St. Louis Trust Co., 149 Mo. l. c. 17; Weatherford v. Farrar, 18 Mo. 474.]

IV.  The evidence fully considered we do not feel justified in interfering with the finding of the court that appellant was not entitled to credit for the items "x x" and "vouchers" appearing in his statement of receipts and disbursements. Said items and a full statement of the evidence with reference thereto will be found in the foregoing statement of facts.

*Unexplained Items.*

In brief, Louis A. McGinnis, testifying for plaintiff, stated that prior to their destruction he had examined the ledgers from which the statement filed by defendant was claimed to have been made. That when examined, said ledgers did not contain the items " x x" and "vouchers" now relied upon by defendant.

Defendant did not appear in person as a witness before the referee in the trial court, but his testimony was given in deposition form. In reading his deposition we receive no real light and very little information concerning these items for which he now claims credit. His testimony on the whole is very vague and unsatisfactory. It is true that the deposition of witness Mc-Donald does state that the items " x x" represented payments made to Sub-Agent Marshall for services in keeping the rental agent informed as to conditions of the leasehold premises and as to prospective tenants. This sort of an arrangement unknown to Louis A. McGinnis and cost-

ing a total of $200 per month, would without further explanation, to say the least, appear unusual. Under the circumstances here presented the burden was upon appellant to establish the justness of any credits claimed by him in connection with the transaction. [Thatcher v. Hayes, 54 Mich. 184, l. c. 186; Choctaw O. & G. R. Co. v. Sittel, 21 Okla. 695, l. c. 706; Dettering v. Nordstrom, 148 Fed. 81, l. c. 85; 9 Ency. of Evidence, 572.]

The evidence produced does not sustain that burden and we do not feel warranted in interfering with the finding made.

V. After the case had been heard before the referee and after the referee had made his report, the appellant asked permission to file an amended answer which undertook to set up the additional defense of the illegality of the contract between Louis A. and Thomas McGinnis. This request was refused and the action of the court in that behalf is now assigned as error.

*Amending Answer.*

The theory of the defense as pleaded in the original answer was: (1) that there never was any agreement between Louis A. McGinnis and the defendant concerning the transactions mentioned in evidence; (2) that defendant settled in full with Louis A. McGinnis for all claims which he "had or might have" against defendant.

The additional defense which was attempted to be made by the amended answer is that the parties did enter into an agreement concerning the matter, but that the agreement was an illegal one in that "it was the purpose and intention of the said parties to use the leases," etc., for immoral and unlawful purposes.

In the case of the Weed Sewing Machine Co. v. Philbrick, 70 Mo. 646, l. c. 648, the following language of Judge Hough in speaking for the court is, we think, applicable here: "The last section of the chapter on amending pleadings requires the court to so construe the law in relation to pleadings and amending the same, as to discourage negligence and deceit, to prevent delay

and to secure the parties from being misled. To permit a party in a suit on a written instrument, to which his name is affixed and with the execution of which he is charged, in the midst of a trial to change the issues and perhaps compel a continuance by making for the first time the defense that he never executed the instrument sued on, when from its very nature he must have been fully cognizant from the beginning of the existence of such defense, without some evidence, at least, of mistake or inadvertence, would, in our opinion, be at variance with both the spirit and the letter of the statute, and lead to great injustice.''

To the same effect are the following authorities: Laughlin v. Leigh, 226 Mo. 620, l. c. 639, and cases therein cited; Gale, Admr., v. Foss, 47 Mo. 276.

In the case of Gale, Admr., v. Foss, supra, Judge WAGNER, speaking for the court, said: ''After a jury was impaneled and the plaintiff had presented his side of the case, the defendants asked leave of the court for permission to file their third amended answer. This permission the court refused. The answer sought to be filed changed materially the whole aspect of the case, and no reason is seen why it was not filed at an earlier stage in the proceeding. The filing of amended pleadings is a matter resting largely in the discretion of the court trying the case, and we are not prepared to say that this discretion was unsoundly exercised on the present occasion.''

In the present case, if defendant was entitled to make the defense which he now attempts to set up in his amended answer he knew that fact from the date of the institution of the suit. No reason is suggested, nor does any appear from the record, why this defense was not interposed before the hearing of the testimony was concluded. The situation fully considered we are unable to say that the trial court failed to exercise a sound discretion in refusing permission to file the amended answer.

The judgment is affirmed. All concur.