HARRY B. ROTH and FRANK ROTH v. GEORGE ROTH, JR., Executor of the Will of FLORENCE ROTH, GEORGE ROTH, JR., Individually, and NORMA ROTH MULLINS, Appellants.—104 S. W. (2d) 314.

Division One, April 21, 1937.

*V. C. Rose, Jr.,* for appellants.

*Clare Magee* and *Lorenzo Jones* for respondents.

FERGUSON, C.—The defendants herein are a half brother and half sister of plaintiffs, who are brothers. Defendants have record title to certain real property situate in the town or city of Unionville, in Putnam County, which they acquired through the will of their deceased mother, plaintiffs' stepmother. Plaintiffs brought this suit in equity asserting that they are "entitled jointly to an undivided one-half interest" in said real property by virtue of a certain contract or agreement between them and their stepmother and pray the court to so find and adjudge. Upon trial of the cause the court entered its judgment and decree granting plaintiffs' prayer, divesting defendants of an undivided one-half interest in all the property involved, and investing plaintiffs therewith. Title to real estate being involved we have jurisdiction of defendants' appeal.

Being here in the nature of a trial *de novo* we shall, with a view to keeping the parties and issues perhaps more clearly in mind, refer to the parties as plaintiffs and defendants. Plaintiffs, as respondents here, "adopt" the statement of the case that appellants make in their brief and therefore the following facts and events, shown by the evidence, are largely taken from appellants' statement without quotation indicated. George Roth, Sr., long a resident of Unionville, was engaged for many years in the retail hardware business in that city. He was twice married. Three children were born of the first marriage, Harry B. Roth and Frank Roth, plaintiffs, and another son Edward, who died leaving no issue. His first wife having died Roth again married. Two children, Norma Roth, now Norma Roth Mullins, and George Roth, Jr., defendants, were born of this second marriage. When he was about twenty years of age the eldest child, Harry (one of the plaintiffs), obtained em-

ployment as a traveling salesman in which line of work he was thereafter regularly employed. The father Roth, Sr., owned a business house, referred to as the store building, on the north side of the public square and also a residence, in Unionville. As of the time of Roth's death (in 1916), and the time of the trial, the value of these pieces of real estate was variously estimated as $5000 to $8000 on the store building and $1800 to $2500 on the residence. At some time about, or prior to, 1907, Roth, Sr., gave a deed of trust on the residence securing a loan in the principal sum of $3000, and about, or prior to, 1911, gave a deed of trust on the store building securing a loan in the principal sum of $6000. From about 1903 until his death June 5, 1916, the father seems to have labored under a continuous and pressing financial strain. During this entire period Harry repeatedly came to his father's assistance. The father was authorized from time to time to draw on a bank account maintained by Harry at a Unionville bank. The evidence shows that during the years 1906 to 1910, both inclusive, the father checked on this account to pay wholesale bills, insurance, taxes and other of his own pressing debts, in an amount aggregating more than $3000. Frequently thereafter upon the urgent importunities of both his father and stepmother for financial help, as appears from letters in evidence, Harry advanced them various sums of money and also paid wholesale bills and other expenses for his father. He paid one note for his father in the amount of $500 with interest. He also advanced his father money on a number of notes which the father had taken from customers in payment of accounts. Such of these notes that were never paid were in evidence. Harry estimated that during the period mentioned he had, in the manner stated, paid for his father's benefit, and in an effort to relieve his financial distress, approximately $8000 none of which was ever repaid. It appears, that Harry's brother, and coplaintiff herein, Frank was physically afflicted; it is said at one place that Frank "was deaf and afflicted and has been all his life." It is vaguely suggested that he was so physically incapacitated that he could not earn a livelihood and the responsibility for his support seems to have fallen to Harry. Plaintiffs allege, and defendants concede that plaintiffs' evidence tends to show, that the father orally promised or agreed that, in consideration of the provision made by Harry for the care of Frank and of the financial assistance given by Harry to the father, he would by will devise and bequeath one-half of his estate to Harry and Frank. Pursuant to that understanding the father, on May 11, 1909, executed a will in due form, which he exhibited and submitted to Harry. It is apparent that Harry considered the will as fully conforming to the alleged agreement or understanding between his father and himself. The will devised and bequeathed to testator's wife Florence, defendants' mother and plaintiffs' stepmother, a life

estate in all of testator's property with the right to sell, mortgage or convey any part or all of same if she should deem it best to do so and invest or use the proceeds in such manner as she thought best, with remainder to be divided equally between the four children Harry, Frank, Norma and George, Jr. This will was never revoked. By deed dated and acknowledged July 30, 1907, recorded October 3, 1910, the father conveyed the residence to his wife Florence subject to the deed of trust thereon securing the principal sum of $3000, and later also conveyed the store building to her, by deed dated and acknowledged March 17, 1911, recorded March 18, 1911, subject to the deed of trust thereon securing a principal sum of $6000. Frank testified that he did not learn, and had no knowledge, of these conveyances until shortly after his father's death in June, 1916. Thus plaintiff's stepmother acquired record title to all the real estate. So far as the record herein discloses a policy of insurance payable to the father's estate comprised the whole of the estate. The will was not filed for probate and Harry and Frank joined with defendants in assigning any interest they might have in the insurance money to the widow. It seems a fair inference that this entire sum was expended in the payment of debts.

In seeking to follow the continuity of events we next quote excerpts from the bill or petition which disclose the basis and theory of plaintiffs' cause of action. It is alleged that "soon after" the death of their father plaintiffs learned that by the deeds mentioned, supra, their father had conveyed all of his real estate to his wife Florence Roth "and that no property of any kind had been left or provided for plaintiffs." The bill then continues as follows: "That shortly after learning that such conveyances had been made and within the time allowed by statute for bringing such suit the Plaintiff Harry B. Roth, acting for himself and the Plaintiff Frank Roth, advised said Florence Roth that the Plaintiffs herein purposed bringing a suit against her seeking to set aside the aforesaid conveyance on the ground that same was obtained by means of undue influence exerted upon George Roth, Sr., while in a weakened condition from disease and in fraud of Plaintiffs' rights as creditor, legatees, and devisees, under the will of said George Roth, Sr.; that thereupon said Florence Roth proposed to Plaintiffs that if they, the Plaintiffs, would refrain from bringing such suit, she, said Florence, would leave to Plaintiffs one-half of whatever estate she might have at the time of her death. That such offer was then and there by Plaintiffs accepted and then and there it was mutually agreed to by said Florence Roth and the Plaintiffs, Harry B. Roth for himself and coplaintiff Frank Roth, that Plaintiffs would refrain from bringing any action against said Florence Roth and that said Florence Roth would leave to Plaintiffs one-half of all property that she might have at the time of her death; and that

Plaintiffs did thereupon refrain from bringing such suit or any other action against said Florence Roth as they would have done but for her promise aforesaid and have fully carried out and performed their part of such contract and agreement.

"That a short time after such contract was entered into it was ascertained that said George Roth, Sr., left a policy of life insurance made payable to his estate upon his death in the sum of $2000.

"Thereupon said Florence Roth requested Plaintiffs to assign to her all their interest in such insurance policy and as consideration therefor said Florence Roth again promised and agreed as in the aforesaid contract that she would make provision for Plaintiffs to have one-half of all the estate she might have at the time of her death and re-affirmed the aforesaid contract by written communication to Plaintiffs. That thereupon Plaintiffs again relying on such promise and statements made by said Florence Roth did assign and transfer to said Florence all their interest in such life insurance policy."

Appellants apparently do not challenge the sufficiency of plaintiffs' evidence, if accepted, to establish an oral contract or agreement, to the effect and as alleged, between plaintiffs and their stepmother but as we understand appellants' statement they concede that plaintiffs adduced substantial evidence to establish such agreement and the foregoing allegations of their bill. The evidence is that the widow had great difficulty in meeting her personal living expenses, paying the interest on the $9000 in notes secured by the two deeds of trust and paying taxes and insurance on the property; that she had no income other than the rental derived from the store building; and that her youngest child, the defendant George, Jr., at various times from the death of Roth, Sr., until her death in 1932 gave her financial assistance which he estimated aggregated $3000. Mrs. Roth's mother, Mary V. Northrup, resided in Mt. Pleasant, Henry County, Iowa. She died in 1921, testate. Her will was duly admitted to probate in Henry County, Iowa. By her will she gave Mrs. Roth a life estate in all her property with "power to sell and convey any of said property and to invest and reinvest the funds derived from such sale or keep the same at interest," and further directed that "in whatever form said property may be, whether as at the time of my death, or changed by investment or reinvestment, my said daughter (Mrs. Roth) shall have the use and income of the same during her natural life. She shall also have the right to use any part of the principal if she deems it necessary without obtaining the authority of any court," and "all that remains of the property herein bequeathed and devised to my said daughter, as aforesaid, or of the porceeds of said property, shall go absolutely in equal shares to my two grandchildren, to-wit, Norma Roth Mullins and George Roth, Jr." (defendants). The record is not clear as

to whether the property composing the estate of Mrs. Northrup was sold and converted into money but two remittances to Mrs. Roth from Mt. Pleasant, Iowa, are in evidence one for $1000 and the other $5777, which the parties seem to treat and consider as being derived from the Northrup estate. During 1921 Mrs. Roth paid the $6000 note secured by the deed of trust on the store building in full and the deed of trust was canceled and released of record. It appears that on May 5, 1921, Mrs. Roth paid $2000 on the $3000 note secured by a deed of trust on the residence and that on March 20, 1927, the note was paid in full and that deed of trust also canceled and released of record. It is apparently conceded that Mrs. Roth used or invested at least some considerable part of the proceeds of her mother's estate in the discharge of these obligations although the writer cannot determine with exactness the amount. Appellants say their mother invested "at least $6000" of the proceeds of their grandmother's estate in this property in discharging these encumbrances. Apparently when Mrs. Roth died December 8, 1932, both the store building and the residence were free of encumbrance. She left a will, which was admitted to probate in Putnam County, whereby she bequeathed only the sum of $20 to each of the plaintiffs and devised and bequeathed all the residue of her estate both real and personal to her two children, the defendants. Whereupon plaintiffs filed this suit alleging the agreement had in 1916 between Mrs. Roth and themselves, as above set out; that same had been fully performed on their part; that by her will Mrs. Roth violated "her contracts with plaintiffs;" that "said will was made for the purpose of defeating the rights of plaintiffs under said contracts and constitutes a fraud on plaintiffs;" and praying the court to adjudge and decree them to be jointly entitled to a one-half interest in her estate and that such interest therein be vested in plaintiffs. As first stated the court granted the prayer of plaintiffs' bill and entered its decree accordingly which included an award of an undivided one-half interest in the real property mentioned free of lien or encumbrance.

Appellants' specific assignments of error here may properly be grouped as follows: (1) that the evidence shows that the contract pleaded and relied upon was wholly verbal and was therefore within the Statute of Frauds and unenforceable; (2) that plaintiffs' alleged cause of action was barred by the Statute of Limitations; and (3) that if plaintiffs, in equity, be held entitled to a half interest in the real property involved, concededly the store and residence property comprised the whole of the real estate, then the defendants are entitled to a prior equitable lien, which the trial court refused to recognize and allow, on the property, in the amount and to the extent that the proceeds of their grandmother's estate was invested or used in discharging the deeds of trust. Of these in the order stated.

As heretofore observed we are not called upon to consider the sufficiency of the evidence as to the agreement pleaded since it seems to be conceded that such contract, though shown to be in parol, was sufficiently proven. But being wholly an oral agreement defendants say it is within the Statute of Frauds, void and unenforceable. The undisputed evidence shows full and complete performance and compliance with the alleged contract on the part of plaintiffs, in reliance upon the promise of their stepmother, and a violation thereof on her part. Under such circumstances equity will not permit these defendants to invoke the Statute of Frauds. "It is a rule in equity that, when one party to a contract has been placed in such a situation by a total or partial performance, that it would be a fraud on him if the contract was not fully executed, then equity will interfere notwithstanding the statute." [Carlin v. Bacon, 322 Mo. 435, 16 S. W. (2d) 46; Farrar v. Patton, 20 Mo. 81; Sutton v. Hayden, 62 Mo. 101; Bless v. Jenkins, 129 Mo. 647, 657, 31 S. W. 938, 940; McGinnis v. McGinnis, 274 Mo. 285, 297, 202 S. W. 1087, 1090.]

It is difficult to follow appellants' presentation of the second assignment, that "plaintiffs" alleged cause of action was barred by the Statute of Limitations." In this connection appellant seems to take the position that the plaintiffs' cause of action is predicated upon the agreement with, or a promise by, their father Roth, Sr., and that this is a suit to enforce such agreement, that Roth, Sr., died in 1916, and that the cause of action, if any, accrued then. This statement suffices, we think, to dispose of the assignment. Clearly the bill pleads, the evidence establishes and plaintiffs' theory discloses that the contract or agreement relied upon, and which plaintiffs seek to enforce, is that entered into between Mrs. Roth and plaintiffs in 1916, subsequent to the death of Roth, Sr., and therefore this cause of action did not arise until her death in 1932 when it was disclosed that she had failed to dispose of her estate, at death, in conformity with that agreement.

We are, however, impressed with the merit of appellants' third and last proposition. Looking to the will of defendants' grandmother it will be noted that it gives Mrs. Roth, their mother, a life estate "in all the property" of which testator died seized, etc., with the "power to sell and convey any of said property and to invest and reinvest the funds derived from such sale or keep the same at interest . . . and to have the use and income of the same during her natural life" and then provides that "upon her death all that remains of the property . . . or of the proceeds of said property, shall go absolutely in equal shares" to the defendants, testator's grandchildren. Concededly Mrs. Roth expended or invested at least $6000 of the proceeds of her mother's estate in discharging the liens of the two deeds of trust, originally placed by Roth, Sr.,

on the store building and residence property, securing an aggregate principal sum of $9000. Had she invested the same amount in the outright purchase of deeds of trust on other property or other securities, as she had power to do under her mother's will, collecting for her own use the interest thereon, during her lifetime, can it be doubted that, upon her death, such securities or investments would have become the absolute property of these defendants. And Mrs. Roth could have used the interest or income derived from such investments as she saw fit, for her personal expenses or the payment of the recurring interest on the notes, secured by the deeds of trust on the store building and residence. The investment made was in effect the same. It enabled her to preserve and use the property and the income therefrom during her lifetime free of encumbrance and the recurring obligation for interest. It was in effect an investment of the proceeds of the mother's estate, the benefit and income from which accrued to her during her lifetime. It did not thereby become a part of her estate in which plaintiffs, pursuant to the agreement, are, in equity, entitled to share. Therefore appellants contend that if plaintiffs be adjudged entitled to an undivided interest in the real property involved that in equity they, the defendants, are entitled to an equitable lien against the whole of each tract in the amount and to the extent that the proceeds of their grandmother's estate was invested or used in the discharge of the lien thereon. Otherwise stated, they ask to be subrogated to that extent to the rights of the holders of the encumbrances. Under such circumstances it would be inequitable to allow the plaintiffs to share in this property free of any and all encumbrance. In granting defendants an equitable lien we nevertheless allow plaintiffs the maximum which they are equitably entitled to claim. Consider the situation had the father in the first instance not conveyed the real estate involved to his wife and had he died seized of title thereto subject to the two deeds of trust securing the aggregate obligation of $9000. His will, which plaintiffs acquiesced in as satisfactorily complying with their original understanding with him as to the disposition of his property at death, gave his wife a life estate in all his property with power "to sell, mortgage, or convey any part or all of the same" and "invest or use the proceeds in such manner as she thought best" and provided that upon her death "the remainder of the property or the proceeds thereof that may be left by said wife" should be "divided equally" between the four children, plaintiffs and defendants. It thus appears that, had the father not conveyed this real estate to his wife, under his will the most favorable and likely interest therein plaintiffs could have anticipated would have been an undivided one-half subject to the full encumbrance of $9000. But with the view we have of this case plaintiffs would take such one-half interest subject only to an equitable lien in favor of defend-

ants against the whole of each parcel of the real estate in the amount of the proceeds of their grandmother's estate shown to have been invested therein, which while indefinite seems to have aggregated approximately $6000. We are of the opinion that the demands and essential principles of equity require this disposition of the cause.

Wherefore the decree and judgment herein is reversed and the cause remanded with directions that the trial court hear proof, if any defendants have to offer, and determine, to the extent same can be definitely ascertained, the amount of the proceeds of the Northrup estate invested by Mrs. Roth in discharging the principal sum of the encumbrance on each parcel of real estate involved and enter a decree granting defendants a lien thereon in such amount and adjudging and awarding plaintiffs an undivided half interest in all the property of which Mrs. Roth died seized subject to such liens. *Hyde* and *Bradley, CC.,* concur.

PER CURIAM:—The foregoing opinion by FERGUSON, C., is adopted as the opinion of the court. All the judges concur, except *Douglas, J.,* not voting because not a member of the court when cause was submitted.