**In re the ESTATE OF Theodor REMMELE, Deceased.**

**Gary C. and Linda J. REMMELE, Respondents/Cross-Appellants,**

**v.**

**Karin I. Remmele FLACH, Cross-Respondent,**

**Charles R. Murphy and F.T. (Tiff) Lauffer, Respondents.**

**In re the ESTATE OF Theodor REMMELE, Deceased.**

**Gary C. and Linda J. REMMELE, Cross-Appellants,**

**v.**

**Karin I. Remmele FLACH, Respondent,**

**Charles R. Murphy and F.T. (Tiff) Lauffer, Respondents.**

**Nos. WD 46500, WD 46513.**

Missouri Court of Appeals, Western District.

June 1, 1993.

Ronald E. Smull, Columbia, for cross-appellants.

Edwin J. Carlton, Columbia, for appellant/cross-respondent.

John Lister Whiteside, Columbia, for respondents.

Before ULRICH, P.J., and BRECKENRIDGE and HANNA, JJ.

HANNA, Judge.

Mr. Theodore Remmele died on January 8, 1990, leaving a last will and testament dated December 12, 1988, which was admitted to probate. The last will and testament bequeaths his residuary estate to the trustees of an inter vivos trust which pours over to his son/respondent, Gary Remmele, the lesser of ten percent or $50,000 and the balance to his daughter/appellant, Karin Remmele Flach, with the income interest to her for twenty years and the remainder to her, or her children if she does not survive. The trust specifically provides that his daughter, Linda Remmele, shall receive no distributions from either the principal or accumulated income of the trust. Respondent, Charles R. Murphy, is the personnel representative of the estate and co-trustee of the trust with F.T. Lauffer.

Decedent, Mr. Remmele, and Cornelia Remmele were husband and wife until they were divorced in Boone County on December 14, 1972. The decree of the divorce had incorporated into it a separation agreement signed by Mr. and Mrs. Remmele. The separation agreement was executed October 31, 1972, and provides that Mr. Remmele "make an irrevocable Will contemporaneous with the signing of this agreement providing that his three children ... shall be named as the sole beneficiaries of his estate to share equally in the estate upon his death...."[1] The separation agreement also provided that each party was to execute such papers as necessary to enable the other party to deal with his or her property and to carry out the purpose of the contract.

The testimony revealed that at the time of the divorce Linda was nineteen, Karin was sixteen, and Gary was eleven years old. There was a great deal of testimony about Mr. Remmele's relationship with his three children, which generally explains the division of property in the trust.

At the time of the divorce, Mr. Remmele wanted to keep the Stonegate Trailer Court and Mrs. Remmele wanted to sell everything, pay their debts and split the balance. The provision in question was a compromise. Mr. Remmele never did execute a will leaving his property equally to his three children. Mrs. Remmele never asked Mr. Remmele for confirmation or compliance of the separation agreement.

Linda and Gary brought this action against the estate as third-party beneficiaries to the separation agreement and dissolution decree. The parties stipulated that in lieu of money damages, in the event the court should find in favor of the plaintiffs, the nature of the relief granted would be to order the estate distributed equally between the three children: Linda, Gary, and Karin. Following a trial to the court, judgment was entered in favor of the plaintiffs (Linda and Gary) and against Karin Flach. Appellant Flach filed her motion to amend the judgment or in the alternative for a new trial. The motion for new trial was denied, the motion to amend judgment was sustained, and on June 17, 1992, the court set aside that portion of the court's order of May 20, 1992, which set aside Mr. Remmele's inter vivos trust dated December 12, 1988. All parties filed a notice of appeal in a timely manner.

Our review of this court tried case is in accordance with *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

█ Our first consideration is whether the five-year statute of limitations for bringing an action on a breach of a contract commenced running at the time of the execution of the contract in 1972 or at the time of his death seventeen years later in 1990. Suit was filed March 29, 1990, less than three months after his death.

The evidence in this case is clear that the decedent and his wife entered into a bilateral contract. In return for the promise made by the wife to sign the separation agreement, the decedent agreed to leave

1. The paragraph reads: "The Husband agrees to make an irrevocable Will contemporaneous with the signing of this agreement providing that his three children, Linda Joan, Karin Ingrid and Gary Carl, shall be named as the sole beneficiaries of his estate to share equally in his estate upon his death, per stirpes and not per capita after payment of all his just debts and obligations and cost of administration of his estate."

one-third of his estate to each of his children. Respondents contend the statute of limitations only commenced when the damages were ascertainable and that would be at their father's death. Appellant Flach argues that the requirement obligating decedent to execute the will "contemporaneously" with the signing of the separation agreement commenced the running of the statute of limitations.

Section 516.100, RSMo 1986 states:

> [T]he cause of action shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and is capable of ascertainment ...

█ Mr. Remmele's failure to execute his will "contemporaneously" was a technical breach of his commitment, which the statute specifically states does not commence the running of the limitation period. His required performance was to leave one-third of his estate to each of his children. In all likelihood, the technical breach of the parties' agreement could have been enforced by an appropriate legal action immediately in 1972, if the excluded children had known of the agreement and they and Mrs. Remmele had known of Mr. Remmele's failure to comply. Generally, the time begins to run under the statute of limitations only after the right to prosecute a claim to a successful conclusion has accrued. *Stafford v. Muster,* 582 S.W.2d 670, 680 (Mo. 1979). The only claim that existed in 1972 was to force Mr. Remmele to execute a will in accordance with the agreement. At that time, the damages were neither sustained or capable of ascertainment.

█ There are some Missouri cases that are helpful in our analysis. In *McCandlish v. Estate of Timberlake,* 497 S.W.2d 191 (Mo.App.1973), the decedent promised to compensate the plaintiff by testamentary provision for losses the plaintiff sustained because he gave up his reserve commission to avoid being called up in the Korean War and continued his work for the decedent. The court held that the promise to compensate the plaintiff by testamentary disposition "pleads an action against which limitations did not begin to run until decedent's death." *Id.* at 195. As a general rule, a cause of action for breach of contract accrues and the right to sue arises, on the failure to do the thing contracted for at the time and in the manner contracted. *Id.; Dalton v. Poinsett,* 164 S.W.2d 124 (Mo. App.1942); *Mittendorf v. Koeller,* 145 S.W.2d 470 (Mo.App.1940).

In *Roth v. Roth,* 340 Mo. 1043, 104 S.W.2d 314 (1937), the deceased made a promise to her stepchildren (plaintiffs) that she would leave one-half of her estate at her death to them if they agreed to refrain from bringing an action against her seeking to set aside their father's conveyance to her on the grounds that the transfer of property was obtained by means of undue influence exerted upon their father and in fraud of the plaintiffs' rights as a creditor under their father's will. The stepsons agreed not to file suit. This agreement occurred in 1916 and the stepmother died December 8, 1932, leaving everything to her biological children (the defendants who were the plaintiff's stepbrother and sister). She did not leave one-half of her estate to plaintiffs and they filed suit claiming they had performed their part of the bargain by refraining from filing suit in 1916. The defendants claimed the statute commenced running in 1916 and the suit filed seventeen years later was barred by the statute of limitations.

The court held that the agreement the plaintiffs sought to enforce was between plaintiffs and their stepmother in 1916 and therefore, "this cause of action did not arise until her death in 1932 and when it was disclosed that she failed to dispose of her estate, at death, in conformity with that agreement." *Id.* 104 S.W.2d at 318.

Mr. Remmele's obligation was to leave one-third to each child of whatever estate he may have had at his death. The thing that Mrs. Remmele contracted for was to have Mr. Remmele leave one-third of his estate to each of their children. Although it would not comport with the spirit of the agreement, Mr. Remmele was at liberty to dispose of all of his property before his death in whatever manner he desired, leav-

ing nothing for testamentary disposition. For this reason, the damages were not ascertainable until his death. The "capable of ascertainment" term "means the fact of damage rather than the precise amount." *Earls v. King,* 785 S.W.2d 741, 744 (Mo. App.1990). The damages were not a fact until his death. It would be impossible to compute the amount of Mr. Remmele's estate until his death.

Therefore, we hold that the cause of action did not arise until Mr. Remmele's death when it was determined he had failed to leave his estate equally to his children, in conformity with his agreement and not at the date of the signing when he technically breached the agreement. In 1972, the damages were not sustained or ascertainable. Plaintiffs filed suit within the time limits of the statute.

In their second point, the defendants claim that laches bars the plaintiffs' action. It is the appellant's burden to prove laches. *Kimble v. Worth County R–III Board of Education,* 669 S.W.2d 949, 954 (Mo.App. 1984), *cert. denied,* 469 U.S. 933, 105 S.Ct. 331, 83 L.Ed.2d 268 (1984). Laches is defined as:

> [T]he neglect for an unreasonable and unexplained length of time under circumstances permitting diligence to do what in law, should have been done.... Mere delay in asserting a right does not of itself constitute laches; the delay involved must work to the disadvantage and prejudice of the defendant.

*Metropolitan St. Louis Sewer Dist. v. Zykan,* 495 S.W.2d 643, 656–57 (Mo.1973).

The plaintiffs brought their cause of action within three months after Mr. Remmele's death. We have held that the statute did not commence running until his death and the suit was filed within the statutory time period. Generally, laches will not bar a claim before the statute of limitations runs. *Rhodus v. Geatley,* 347 Mo. 397, 147 S.W.2d 631, 639 (1941).

Nevertheless, in this case there was evidence that the plaintiffs did not know of the provision in the separation agreement requiring Mr. Remmele to leave his estate equally to his three children. It was not until after his death that they learned the terms of the separation agreement for the first time. Mrs. Remmele testified that she knew of the separation agreement, but did not realize he had not executed a will in accordance with its direction. She relied upon the advice of her attorney that she had nothing further to do after the separation agreement was signed.

Since the trial court did not submit findings of fact and conclusions of law, "we deem the factual issues to have been found in accordance with the result reached." *Mid–Continent Nat. Bank v. Bank of Independence,* 523 S.W.2d 569, 573 (Mo.App. 1975); Rule 73.01(b). Knowledge by the plaintiffs that they were to receive one-third of their father's estate is essential for the successful invocation of laches. *See Stenger v. Great Southern Sav. & Loan Ass'n,* 677 S.W.2d 376, 383 (Mo.App.1984). However, lack of knowledge will not prevent the application of the doctrine if one does not use some diligence to determine "what he might have known, by the use of the means of information within his reach, with the vigilance the law requires of him." *Russell v. Russell,* 427 S.W.2d 471, 478 (Mo.1968). We know of nothing that would require a daughter or son to make inquiry of their father or another to learn whether they were to receive property from his estate or to determine the terms and conditions of a property settlement between their parents. The trial court's decision is consistent that the facts were unknown to the plaintiffs and our review sustains that finding. *Murphy,* 536 S.W.2d at 32. There was no obligation upon either child or the former wife to inquire about such matters in order to prevent the affirmative defense of laches. Equity does not encourage laches and the doctrine may not be invoked to defeat justice but only to prevent injustice. *Zykan,* 495 S.W.2d at 657. Laches does not apply and the point is denied.

For her final point, appellant Flach complains of the trial court's failure to award her attorney fees. The respondents also complain that the trial court should have

awarded them attorney fees. We will take up both points.

The award of attorney fees is an equitable matter, which the court of equity may award in its discretion. The parties did not file this lawsuit or defend it "merely for the purpose of obtaining a construction of the instrument creating the trust and the direction of the court, but to enable the litigant to obtain something as an heir." *Trautz v. Lemp,* 334 Mo. 1085, 72 S.W.2d 104, 108 (1934). All litigants to this lawsuit had as their goal to obtain something of value for themselves. Under these circumstances, attorney fees need not be allowed. The trial court did not abuse its discretion by refusing to allow attorney fees to the parties.

In addition to their claim of the trial court's failure to award attorney fees, cross-appellants, Linda and Gary, contend that the court erred by setting aside its judgment of May 20, 1992, which had vacated the decedent's inter vivos trust of December 12, 1988, for the reason that the contingent beneficiaries of the trust were not joined as necessary parties. After appellant Flach lost her claim that the inter vivos trust should control the testamentary disposition, she filed a motion to amend the judgment. She raised the issue in her post-trial motion for the first time that her two children had not been joined as parties to the lawsuit. She claimed her children were "necessary parties" pursuant to Rule 52.-04(a). The trial court agreed and set aside its order, which had previously vacated the trust agreement, thereby reinstating the inter vivos trust. The net result is that the inter vivos trust remains in effect. Our issue is whether Karin Flach, the mother of the children, had interests sufficiently identical to those of her children to dispense with the children's presence in the lawsuit.

This is an action brought by two children of the deceased grantor, against the primary beneficiary, who stands to lose the most if the trust is defeated. The non-joined beneficiaries are the children of the primary beneficiary of the trust who are to receive income and the principal of the trust only if they survive the grantor's death by twenty years and their mother does not. The two children have an interest in the outcome of the lawsuit, although it is contingent and remote. If the mother is successful in her defense of the trust, then her two children (and any others born in the interim) may have some interest in the trust income and principal. They will have no interest in the trust if their mother survives the grantor's death by twenty years. If the trust is the instrument of testamentary disposition, the mother will gain substantially more income from the grantor's estate and her children have a possibility of receiving benefits from the estate. If the trust is defeated, the mother's income will be substantially less and her children will receive nothing from the estate.

It is apparent that the interests of the children, as a practical matter, are identical to their mother's interests. It would be in the children's interest to uphold the trust and certainly that was the position of their mother throughout the course of this contested litigation. In reality, she represented her children's best interests.

Rule 52.04 requires that a party be joined if he claims an interest and his situation is such that the disposition of the action in his absence may, as a practical matter, impair his ability to protect that interest. A "necessary party" is defined as one who is so vitally interested in the subject matter of controversy that a valid judgment adjudicating the subject matter cannot be effectively rendered without their presence as parties. *Shepherd v. Dept. of Revenue,* 377 S.W.2d 525, 527 (Mo.App.1964).

*Bolin v. Anders,* 559 S.W.2d 235 (Mo. App.1977) is instructive. The contingent beneficiaries were not made parties to a suit brought by income beneficiaries under a trust established by grantor's will. The court held that the life tenant had a sufficient interest to represent the interests of the contingent remaindermen under the doctrine of virtual representation where the charge was that defendant had obtained real estate by unduly influencing the grantor in the execution of certain deeds.

Under these facts, the interests of the non-joined children depended entirely upon the success of their mother's defense of the trust. As such, the mother's interests were parallel and supportive of her children's interests. *Id.* at 245–46. Thus, the non-joined children's interests were adequately protected as the doctrine of virtual representation applies. The representation by the primary beneficiary of her children's contingent beneficiary interests, as a practical matter, did not impair the children's interests. Those interests were adequately protected. *Id.;* Rule 52.04(a)(2)(i). In that respect, the trial court's order should be reversed and the inter vivos trust vacated.

The judgment of the trial court is affirmed in all respects except the court's post-trial order reinstating the inter vivos trust is reversed and the case is remanded for entry of judgment accordingly.

All concur.